SOPHRONIA GANSON, Executrix, etc., Respondent, v.
GEORGE W. TIFFT, Appellant.

G., plaintiff's testator, leased of defendant an undivided half of certain
premises in Buffalo, upon which was a warehouse and elevator, for
twelve years from August 1st, 1862. The lease contained a provision
that in case the warehouse and elevator should, during the term, be
destroyed by fire, defendant would forthwith proceed to rebuild and
put it in as good condition as before destruction; in case he did not
rebuild in six months after such destruction, then that the lease should
terminate, if G. so elected. The buildings were destroyed by fire dur-
ing the term; defendant notified G. that he did not intend to rebuild,
and thereafter sold the premises. In an action to recover dam-
ages for the refusal to rebuild, held, that G.'s remedy, under the
lease, was not limited to a termination of the lease, in case defendant did
not rebuild within six months, nor was he required to notify defendant

of his election; that his remedy for damages was complete upon failure to rebuild. Also, that the fact that G. did not pay or offer to pay rent after the fire, did not show a surrender or relinquishment of his claim, or suspend his right of action.

In 1866, G. executed a lease of his interest in the premises to N. C. & H., for eight years from August 1st, 1866, reserving therein a right of reentry for non-payment of rent or breach of other conditions, the lease also contained a covenant that the lessees would, at the expiration of the term, or other sooner determination of the demise, surrender possession to the lessor; also, that the lease should not terminate in case of destruction by fire, provided defendant should elect to rebuild. Defendant also executed a similar lease of the residue of the premises to N. C. & H. The latter firm, after defendant's refusal to rebuild and sale of the premises, terminated their lease under the statute. *Held*, that neither the leases to N. C. & H., nor the acts of the parties under them, established an abandonment of the covenant to rebuild; that the instrument executed by G. to N. C. & H. was a sub-lease, not an assignment of the entire term, and so did not transfer the right of action against defendant.

*Woodhull* v. *Rosenthal* (61 N. Y., 383) distinguished.

The doctrine of *Collins* v. *Hasbrouck* (56 N. Y., 157) reaffirmed.

The sub-lease from G. to N. C. & H. was offered and received in evidence upon the trial, without objection, and no motion was made to strike it out. The court was requested by defendant's counsel, but refused, to charge that it could not be taken into consideration on the subject of damages. *Held*, no error; that it was proper to be considered upon the question as to the rental value of the premises.

It appeared that there was an association of the owners of elevators, formed for the purpose mainly of regulating the prices, to whom at times the elevators were all leased. The court was requested, but refused, to charge that in determining the amount of damages, the jury must not take into consideration any future profits, or enhanced value of the lease arising from such association. *Held*, no error; that the additional value of the lease, arising from the formation of the association, was a proper subject for consideration by the jury, although the association was illegal, it not appearing that G. had any connection therewith; that the real question was, what was the unexpired term worth under all the circumstances, and the character of the association was not a subject for consideration.

(Argued June 21, 1877; decided October 9, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought for an alleged breach of a covenant to rebuild contained in a lease.

On the tenth day of April, 1862, John S. Ganson, the plaintiff's testator, leased of the defendant the undivided half of certain premises in the city of Buffalo, for the period of twelve years, from August 1st, 1866, and agreed to pay as a rental the annual sum of $4,000. Defendant covenanted to erect thereon a warehouse and elevator, and have the same ready for use at or before the commencement of the term.

The lease contained the following provision:

"Eighth. In case the said warehouse and elevator, its machinery and appurtenances, shall at any time during said term be destroyed or injured by fire or lightning, said Tifft shall forthwith proceed to rebuild or repair the same, and put the same in as good condition as they were before such destruction or injury; and in case the same shall not be rebuilt or repaired within six months after such destruction or injury, then this lease and demise and terms hereby created shall absolutely cease and determine, if the party of the second part so elect."

On the thirtieth day of July, 1866, Ganson executed an instrument leasing his interest in the premises to Nims, Clark & Holt for the term of eight years, from August 1, 1866, at an annual rental of $8,500. The lease contained a provision that at the expiration of the term the lessees should yield up possession of the demised premises to Ganson, and also that the destruction of the premises by fire should not terminate the lease provided, the defendant should elect to rebuild, and should proceed with reasonable diligence to do so.

It also contained a clause reserving to the lessor a right of re-entry, in case of default in payment of rent or breach of any other of the covenants of the lease.

At the same time defendant also leased to Nims, Clark & Holt his undivided half of the same premises for the same rental and term, and upon substantially the same conditions. On the twenty-first day of April, 1867, the warehouse and elevator were destroyed by fire.

On the fifteenth of May, 1867, defendant notified Ganson by letter that he had concluded not to rebuild, and on the same day he conveyed the premises to the Niagara Elevating Company. Nims, Clark & Holt thereupon terminated their lease under the statute. Upon the trial, evidence was given, tending to show that during each season the owners of elevators were accustomed to form an association, to which all the elevators were leased. This association fixed the price for elevating, received the pay, and after certain allowances for operating expenses, divided the earnings among the elevator owners in certain proportions. After August 1st, 1869, Mr. Ganson did not pay, or offer to pay, the rent reserved in his lease.

At the close of the evidence defendant's counsel moved for a nonsuit upon the following grounds, among others : The sub-leases of July 30, 1866, operate as a new or substituted lease in the place of the one of April 10, 1862, so that the term ceased and determined on the burning of the elevator at the election of Tifft instead of Ganson. That by the leases of July 30, 1866, to Nims, Clark and Holt, Ganson transferred all this estate in the demised premises, and discharged Tifft not only from his covenant of quiet enjoyment, but from his covenant to rebuild. That no damages but what are provided for in the sub-leases, in case the elevator burned, can be recovered in this action. That the only right reserved to Mr. Ganson, in case of the burning of the elevator, was to declare the lease void, and that he had no right of action for damages, in case Mr. Tifft elected not to rebuild it. That Mr. Ganson's acts amounted to an acquiescence in the termination of the lease, and a waiver of any right to damages on account of non-rebuilding of the elevator. The court denied the motion, and the defendant's counsel excepted. The defendant's counsel asked the court to charge the jury that the sub-lease of Ganson to Nims, Clark and Holt, and the rent reserved therein could not be taken into consideration by the jury in determining the amount of damages. The court declined so to charge, and said counsel duly excepted.

Defendant's counsel also asked the court to charge, that, in determining the amount of damages of the difference between the value of the lease for the unexpired term and the stipulated rent, the jury must not take into consideration any future profits or enhanced value of the lease which might arise from the association of the owners of the elevators. 1st. Because they are too remote, speculative and contingent; and 2d. Because such associations are illegal. The court refused so to charge the jury, and said counsel duly excepted.

Further facts appear in the opinion.

*E. C. Sprague,* for appellant. The acts of plaintiff's testator amounted, in law, to an election on his part, to determine the lease within the meaning of the eighth clause of the lease. (*Bedford* v. *Terhune,* 30 N. Y., 462.) By the execution of the lease to Nims, Clark & Holt, plaintiff's testator assigned his entire term, and this carried with it the covenant to rebuild. (Taylor's L. & T. [1st ed.], chap. 5, § 1, p. 127; *Collins* v. *Hasbrouck,* 56 N. Y., 157; *Woodhull* v. *Rosenthal,* 61 id., 383, 391, 392; Cooper's Case, 2 Wils., 375; *Preece* v. *Corrie,* 5 Bing., 24; *Armenter* v. *Webber,* 2 Moore, 656; *Davis* v. *Morris,* 36 N. Y., 569; *Woodhull* v. *Rosenthal,* 61 id., 383; *Constantine* v. *Wake,* 1 Sweeney, 239; *Lloyd* v. *Cozzens,* 2 Ashm. [Pa.], 138; *Palmer* v. *Edwards,* Doug., 187*n*; *Thompson* v. *Rose,* 8 Cow., 266; Arch., L. & T., 108; 43 L. Lib., 116.) In determining the amount of damages, the jury could consider any future profits which might arise from the association of the elevators. (*Nellis* v. *Clark,* 20 Wend., 27–37; *Evans* v. *Richardson,* 3 Meriv., 469; *Baker* v. *Biddle,* 1 Bald., 394; *Berett* v. *Oliver,* 7 G. & J., 207; *Cowan* v. *Price,* 1 Bibb., 173; *Stewart* v. *Coulter,* 4 Rand., 78.)

*Sherman S. Rogers,* for respondent. The making of the sub-lease to Clark and Holt did not amount to an assignment of a lease; a new estate was created by it. (*Collins* v. *Hasbrouck,* 56 N. Y., 157.)

MILLER, J.  It is not apparent that the leases to Nims, Clark and Holt, or the acts of the parties under them, establish an agreement between Tifft and Ganson, to the effect that the covenant to rebuild in the original lease should be abandoned, and that the provisions as to rebuilding contained in the new leases should be substituted·in its place.

No new relations were created by the last-mentioned lease, ·which relieved the defendant from the effect of the covenant to rebuild ; nor did the lease to Nims, Clark and Holt contain provisions in regard to Tifft's obligations, in case of the burning of the elevator, which were inconsistent with those existing under the original lease.  There was no provision in the lease from Ganson, which prevented the assertion and enforcement of any rights which he had previously enjoyed ; nor is there any real ground for claiming that a new arrangement was to be substituted in the place of the original lease.

The eighth clause of said lease between Ganson and Tifft did not in terms expressly confer upon Ganson any right of action for a breach of the covenant to rebuild by Tifft ; but such right of action necessarily follows such a breach. Ganson had the right, in case the elevator was not rebuilt or repaired within six months, to determine whether the lease should cease.  He was, however, under no obligation to notify Tifft of his determination, nor terminate the same, and his remedy for damages was complete upon a failure to rebuild.

It is true, that the demise in the lease is merely for the land, and the lessee agrees to take the premises and pay the rent; but this provision must be considered in connection with the covenant to rebuild, which constitutes an important part of the consideration for the rent agreed to be paid, and it is not a fair and reasonable deduction that such rent was to be paid for the land alone, which would be of comparatively little value.  Nor does the execution of the lease by Ganson to Nims, Clark and Holt, or any other act on his part, evince that it was understood that the only remedy in case Tifft did not rebuild, was to terminate the lease, and Ganson did no

act which can be considered an election to do so. The fact that he did not pay or offer to pay rent, does not show a surrender or relinquishment of his claim. His right of action for damages accrued upon the failure of Tifft to rebuild, and this, under the lease, was not suspended by the non-payment of the rent. Under the circumstances, it is not a legitimate inference that Ganson acquiesced in the sale of the premises by Tifft, or to a surrender of the covenant to rebuild contained in the lease, and thus parted with all claim for damages for a failure to perform the same.

It is urged that Ganson, by the execution of the lease to Nims, Clark and Holt, assigned his entire interest therein, and this carried with it the covenant to rebuild. The instrument referred to contained a provision reserving a right of re-entry for non-payment of rent, or a breach of other conditions; and that at the expiration of the term, or other sooner determination of the demise, the lessees should quietly surrender and yield up possession of the demised premises to the lessor. *This* constituted a sub-lease of the premises, and not an assignment of the entire term, which transferred any right of action against the defendant.

A new estate was thereby created; and at the expiration of the term demised, possession of the premises was to be surrendered to Ganson, the lessor. The legal effect of conditions of this description was the subject of consideration in the case of *Collins* v. *Husbrouck* (56 N. Y., 157), and it was held, that where a lessor executed an instrument conveying the whole of his unexpired term, but reserving rent at a different rate and time of payment from the original lease, and a right of re-entry for non-payment of rent, and on a breach of other conditions; and also providing for a surrender of the premises to him on the expiration of the term, the instrument is a sub-lease, and not an assignment. This case is directly in point, and disposes of the question considered, unless some reason exists for disregarding or questioning its authority. The case of *Woodhull* v. *Rosenthal* (61 N. Y., 383), is relied upon for this purpose. In the

case last cited, it was held, that where a lessee, by a written instrument, transfers to another, either with or without condition, all of his interest in a portion of the demised premises, it is not a sub-lease; but an assignment *pro tanto.* There was no reservation of a right to re-enter on a breach of any of the conditions of the lease, or for a surrender of the premises at the expiration of the term; and the question now considered did not distinctly arise. The opinion of the learned judge does not refer to *Collins* v. *Hasbrouck* (*supra*); and as that case had not been reported when the decision was made, it may be assumed that the attention of the court had not been directed to it. It cannot, therefore, be regarded as questioning the authority of the former case, which, at the time, was decisive of the question considered, and the law of the State. It is said that the opinion in *Collins* v. *Hasbrouck* is not supported by the authorities. I think that this position is not well founded, even if it were proper to reconsider the subject. The authorities from this State, as is manifest from the opinion, where they are examined and considered, are almost entirely in that direction. Nor is it entirely plain, in my opinion, that the decision is adverse to the text-books, and the English cases relied upon, as the latter differ in many respects from the case last cited, as well as from the one at bar. In the text cited from BACON, Ab., in 61 N. Y. (*supra*), nothing is said as to the covenant to surrender the premises at the expiration of the term. Regarding 56 N. Y. (*supra*), as a controlling authority, in which the decisions of this State are criticised and considered in the opinion, and which has never been overruled, it is decisive of the question; and it is not necessary to examine *de novo* the authorities upon which it is based, and thus open a discussion which has been put at rest by that decision.

There was no error in the refusal of the judge to charge the jury that the sub-lease of Ganson and the rent reserved could not be taken into consideration by the jury in determining the amount of damages. It was received in evidence

without objection, and no motion was made to strike out the testimony. It was, therefore, a part of the case to be submitted to the jury, and there is no principle of law which demanded that it should be disregarded and ruled out as having no bearing whatever. It certainly bore upon the question as to the rental value of the premises, and showed the amount for which the unexpired term could be disposed of to responsible parties. This was some indication as to its value over and above the rent reserved in the lease between Ganson and the defendant. That it could be rented for the amount of rent named, was a fact for the consideration of the jury in determining the amount of damages. It may also be remarked that a considerable portion of the evidence as to value had reference to this lease by comparison, and no objection was interposed on that account. Nor does it, in my opinion, affect the relevancy of the testimony, because other considerations entered into the execution of the sublease besides those which were taken into account in the making of the original lease. *All* of those grew out of, and were the result of the original lease, or connected with it, and were proper subjects for consideration by the jury in weighing the testimony. The objections now urged were not made to the introduction of the evidence, or otherwise directly presented upon the trial, and they are not now available.

We think that there was no error in the refusal to charge, that in determining the amount of damages, or the difference between the value of the lease for the unexpired term and the stipulated rent, the jury must not take into consideration any future profits or enhanced value of the lease, which might arise from the association of the owners of the elevators. It is urged—first, that these damages were too remote, speculative and contingent; and second, that the associations referred to were illegal. There was proof showing that at times the business of elevating grain was done by each elevator company separately and alone; and at other times, by an association of the different companies, formed mainly for the

purpose of regulating the price. The additional value which arose from the formation of associations bore directly upon the question of damages, and was clearly a proper subject for consideration by the jury in fixing the amount of the same. As to the illegal character of the associations, it was a matter with which the plaintiff had no connection, and for which he was not responsible.

A party who has a contract for the sale of an article of property at the market value, cannot be prevented from recovering the actual value, because the price has been raised by a combination and conspiracy of strangers, to which he is not a party. He is entitled to the real value without regard to any such consideration, and the alleged conspiracy or combination is too remote to affect such right, so long as he has no association or connection with the conspirators. It is no defense to an action brought to recover the price of property sold, that the vendor knew it was bought for an illegal purpose; provided that it is not made a part of the contract that it shall be used for that purpose, and that the vendor has done nothing in aid or furtherance of the unlawful design. (*Tracy* v. *Talmage*, 14 N. Y., 162, 176.) Within this rule, the plaintiff was not guilty of an act which prevented a recovery of the value of the lease, and the real question was, what was the unexpired term worth, under all the circumstances, and for what amount could the premises be sub-let ?

In no event, we think, could the legal character of the association be the subject of consideration in disposing of the plaintiff's claim. But even if a question exists as to the accuracy and soundness of the rule stated as applicable to such a case, the distinct point was not made as to the legality of the association upon the trial, and does not now arise. Whether the proof established an association which was illegal and criminal, depends very greatly upon the actual intent of the parties, and it certainly is not established conclusively, that the object was not legitimate, so as to authorize a holding as a matter of law to the contrary.

The most which can be claimed, as to the question arising in regard to the illegality of the association is, that it was for the jury to determine whether the evidence established that such was the case. No request was made to submit the question to their consideration, and in the absence of such request it is not now before us.

It is somewhat remote to determine what elements may have entered into the consideration, in the sub-leasing of the premises, or may have affected their rental value, for the unexpired term of the original lease. Be that as it may, however, it is not necessary, for the reasons already stated, to consider that question more at large.

There was no error in the charge in reference to the alleged eviction; and as no grounds are shown for reversing the judgment, it should be affirmed.

All concur, except CHURCH, Ch. J., and ALLEN, J., not voting.

Judgment affirmed.