Bradley, J.
The question presented is whether the appellant, the New York, Lake Erie and Western Railroad Railroad Company, is to any, and what, extent hable to the plaintiffs for the unpaid interest accrued upon the bonds of the Erie and Genesee Yalley Railroad Company, secured by the mortgage in question, and for the principal of such bonds.
This liability depends npon the existence of some relation assumed by the appellant to the lease made by the E. and G. V. R. R. Co., or to the estate or term conveyed by it, which charges the appellant with the performance of its covenants to pay in behalf of the holders of the bonds represented by the plaintiffs.
By the terms of the covenants in the lease to Woodruff, he undertook to pay the interest as it accrued and the principal at maturity. And by his lease to the Erie railway company he conveyed the entire term and all the rights he had taken by the lease to him, and that company agreed to perform all the obligations he had assumed. And although this was not put in the form of an assignment of the lease and term by Woodruff to the Erie railway company, the legal effect was the same as it embraced all that he had acquired from the original lessor. Stewart v. Long Island, R. R. Co., 102 N. Y., 601; 2 N. Y. State Rep., 557. This fact distinguishes it from the effect of a sub-lease as such, *817 and, therefore, the case of Ganson v. Tifft (71 N. Y., 48), cited by counsel, is not applicable to the situation here.
The Erie railway company, therefore., became liable as upon the covenants of the original lease to pay what they required assuming that it was valid.
And that company did pay the interest upon the bonds up to the first day of January, 1875.
The transactions following that time, and their effect as relates to the road in question, and to the relations assumed to the covenants in the lease, constitute the matters for consideration. Early in 1875 an action was brought by the attorney general in behalf of the people against the Erie railway company, its directors and others, to dissolve the corporation and for the usual relief in such cases, amongst which was that a receiver be appointed of its property. And in May, 1875, Hugh J. Jewett, who was president of the company, was appointed in that action receiver of all its property, and vested with ample power to continue the operation of the railroads of the company; and later in the month his powers were enlarged by an order of the court, by which, amongst other things, he was authorized in tlie exercise of a sound discretion to pay rent due and to become due under any leases held by the Erie railway company, but he was not required to “adopt and confirm any such leases that upon due inquiry he shall find not to be advantageous to all parties interested.”
In June, 1875, an action was brought by the Farmer’s Loan and Trust Company to foreclose a mortgage made by the Erie Eailway Company to it, as trustee, of date February 4, 1874, to secure the payment of $40,000,000 of its bonds, of which $25,000,000 had been issued; upon which the company was in default in payment of interest. This mortgage covered all the railways of the Erie Eailway Company, and all its rights and franchises, which seem to embrace the estate and rights of the company under the Woodruff lease. The same person was appointed receiver in that action on June 15, 1875, of all the property covered by that mortgage. And he assumed the possession and operation of the railroads and property, including that in question.
By the judgment of foreclosure, and for the sale of the mortgaged property entered November 7, 1877, it was ad judged that " ‘ the plaintiff shall be at liberty to abandon and disclaim at any time before the sale any leasehold estates or interests embraced and included in the mortgage not deemed to be valuable, by giving notice of such aban - donment and disclaimer to the referee m "writing, and the referee shall not expose the leasehold estates and interests *818 so abandoned and disclaimed for sale as part of the mortgaged premises.”
The sale was made April 24, 1878, and it appears by the referee’s report of sale that certain leases, including the. Woodruff lease, were not embraced in the property sold, and that it was by him distinctly announced that they would not be included in the sale, or the estates and interests purporting to be created by them. It also appears by the terms of sale furnished by the referee before it took, place, and by him subscribed, that the property to be sold will consist of the mortgaged property, described as in the mortgage, ‘ ‘ excepting therefrom such portions thereof as-will be declared excepted at the time and place of sale.”
The report of sale was confirmed. And the deed made, by the referee to the purchasers, pursuant to the sale and. of date April 26," 1878, contains the exception from the conveyance of the Woodruff lease, and the certain leases appearing by the report of sale not to have been included in the sale as made. And they are in like manner excepted in the conveyance by the purchasers to the New York, Lake Erie and Wester n Railroad Company, of date April 27, 1878.
The transaction of the sale and the conveyance made pursuant to it to the purchasers, as represented by the report of sale and the deéd. establish the fact that the lease in question was rrot included in such sale and conveyance, nor did it pass by the terms of the deed to the N. Y., L. E. and W. R. R. Co. And inasmuch as all the interest and estate of the Erie Railway Company in the E. and G-. V. R. R. were represented by this lease, it is difficult to see how any estate under it could pass by an instrument wdrich excepted the lease from its operation as a transfer or conveyance. It is said on the part of the plaintiffs that the sale was made to the purchasers pursuant to a scheme for reorganization or reconstruction, by which it was contemplated the company to be organized would practically become the successor of the Erie Railway Company and take property, rights and franchises of which it was possessed; and it is contended that notwithstanding the form given to the sale and the conveyances following it, the term or estate of that company given by the Woodruff lease came within the purpose and intent of the sale and conveyances, and therefore, passed by them, and the appellant was charged as assignee of the lease. And such seems to have been the view of the trial court.
It is true that a plan for the organization of a company was adopted and approved by the order of the court, and the receiver was authorized, so far as consistent with his duties, to aid in its accomplishment. The judgment *819 was directed and the sale and purchase made with a view to such reorganization.
And the purchase committee, or trustees, to whom the sale was made, associated with themselves others in the certificate of incorporation, and the appellant was incor ated on the 27th day of April. 1878, pursuant to Laws of 1874, chap. 430, as amended by Laws of 1876, chap. 466. And we think that for the purposes of this action the appellant company must be deemed a new company and a distinct organization from the Erie railway company.
The right given by the terms of the judgment to abandon, disclaim and except from the sale of the mortgaged property certain 'leasehold estates and interests, evidently was designed to relieve the new organization from the burden of such of them as were not deemed valuable. And so far as that provision of the judgment was carried out in the manner prescribed, it must, for the purposes of this action, be deemed effectual. That it was so done is evidenced by the order of confirmation of the report of sale. The conclusion seems to follow that the leasehold interest in question did not pass by the judicial sale to the purchasers, nor by the deed of the latter to the appellant. It is, however, contended that the leasehold estate was subsequently transferred by the receiver, by virtue of his power as such, to the N. Y. L. E. and W. R. R. Co., and accepted by the company. And reference is made to the petition of the receiver of date May 3, 1878, in which, amongst other things, he pravs that if the court shall be of the opinion that it is safe, proper' and judicious for him to do so, he “may he authorized and directed to transfer, surrender and deliver to the said New York, Lake Erie and Western Railroad Company all the property and franchises in his hands and under his control,” subject to certain reservations not important upon the question under consideration; and to the order of the court of the same state, by which it was ordered that the “receiver do transfer, deliver and surrento the said New York, Lake Erie and Western Railroad Company all the property and franchises whereof he is now possessed as receiver * * * and which were embraced in the judgment of foreclosure, ” subject to the reservations specified in the petition.
This language in both these documents is quite unequivocal, and broad enough to embrace the subject of the lease in question, which he then held as receiver. And in this petition he recites the proceedings had in the two actions, and says that, in pursuance of the judgment in the Farmers Loan and Trust Company action, all and singular the mortgaged premises were sold as therein directed by the referee, “and on such sale the same and every part thereof *820 were purchased” by the trustees. While this statement does not appear to be in accordance with the fact, it may have been within his understanding, and it is in harmony with the prayer of the petition and the order thereupon made by the court. No transfer appears prior to June 1, 1878, when it appears, by a receipt of the appellant, that it received that day of the receiver, pursuant to the order of May 3, 1878, all the property mentioned as being in the judgment and enumerated in the referee’s report of sale thereunder, and necessary to the use, management and maintenance of the railroad, being the property thereof purchased by the trustees “for the use, benefit and behoof of the New York, Lake Erie and Western Railroad Company,” excepting certain properties to which it is not now necessary to refer. This receipt in the view taken of the sale does not necessarily embrace the Woodruff lease. On the 18th day of July, 1878,' the receiver made to the appellant a transfer of various executory contracts specifically mentioned. This instrument purports to have been made pursuant to the judgment of foreclosure, and states that the appellant has assumed such contracts. It does not embrace the lease in question. By an instrument, addressed to the hoard of directors of the New York, Lake Erie and Western Railroad Company, of date December 4, 1879, the receiver makes his final transfer to that company, in which he refers to his petition of May 3, 1878, and the order of same date directing the transfer, also to a transfer and surrender on the 1st day of June, 1878, and adds: “I now propose to, and herewith do, transfer to your company all of the property of the Erie railway company, real and personal, remaining in my hands, as receiver, not heretofore transferred and surrendered to you above recited, in order that you may become completely possessed of all the property of the Erie railway company, which was sold under foreclosure and which became vested in you by such sale, and the subsequent conveyances and assignments above referred to.” And by order of the 30th of December, 1879, entitled in both actions, all the accounts, acts, doings and transactions of the receiver, in the actions to and including the 5th day of December, 1879, were “fully approved by the court and declared to be final and binding upon,all parties in interest;” and he was discharged from liability or from any accounting to and including the 5th day of December, 1879. This order was made upon the report of a, referee who had been appointed to examine the accounts and transactions of the receiver. This report was dated December 30, 1879, and purported to contain a statement of the accounts of the receiver and various transactions from and including the sale upon the judgment of fore *821 closure; and amongst other things it stated that the railways and all the other property and assets of the Erie Railway Company were sold to and purchased by the trustees before mentioned, and that the conveyances were made to them and by them to the appellant accordingly; that the latter claimed that under the judgment of foreclosure and sale, purchase and transfer made by the purchasers to it, that it was entitled to, and should receive from the receiver a transfer and delivery of all the railroads and property in his possession, and requested him to make such surrender; that thereupon the petition and order of May 3, 1878, before referred to, were made; that on June 1, 1878, the receiver transferred and surrendered to the N. Y., L. E. and W. R. R. Co. the said railroad of the Erie Railway Company, its equipment and all property appurtenant thereto and convenient for its use and operation, and took from the company the acknowledgment of the receipt of the property, as before mentioned; that “as of the 26th day of July, 1878, m pursuance of the requirement of said judgment, the said Hugh J. Jewett reassigned to the Erie Railway Company such of the said executory contracts of the last named company as the said New York, Lake Erie and Western Railroad Company had elected not to receive, and assume the liabilities thereof,” a copy of which reassignment was referred to as an exhibit attached to the report.
And in the final judgment entered in the people’s action, November 25, 1879, also referred to in such report of the referee, it was amongst other things adjudged that the sale under the judgment of foreclosure m the Farmer’s Loan and Trust Company action, and the conveyances and assignments made by the referee pursuant to such sale to the purchasers, and by them to the N. Y., L. E. and W. R. Co., did vest in that company “a good and valid title to all the property of every kind and description embraced and described in the said judgment and in the several conveyances and assignments. These various papers and records, and the expressions in the report of the referee and elsewhere relating to the effect and extent of the judicial sale and the conveyances and transfers of the property of the Erie Railway Company, are thus quite specifically referred to, because they are treated by counsel as important, and in view of the fact that the appellant took possession of and operated the railroad in question, it is contended that they go to establish the proposition that the appellant took the rights and assumed the obligations of assignee of the Woodruff lease and of the term or estate created by it. And reference is also made to a conveyance of date June 2, 1879, made by the receiver pursuant and in obedience to a *822 decree of the court of chancery of the state of New Jersey, containing words purporting to convey all the property of ■ the Erie Railway Company to the appellant, but it is evi- • dent that it had relation only to the property within the jurisdiction of that court, and did not embrace any leasehold interests in the state of New York.
This lease, with all the rights it furnished, being covered by the mortgage foreclosed, passed to the receiver by force of his appointment and of the powers vested in him, and by the_ conveyance and transfer which, by the judgment, the Erie Railway Company was directed to make to him. And although this lease was not included in the sale on the judgment, yet it may be assumed that if the receiver after-wards, in execution of the order of May 3, 1878, transferred the lease to the appellant, and it accepted such transfer, it would be charged with the relation of assignee.
The fact, unexplained, that the company was in the actual possession of this leased road would permit the inference that it had such possession as assignee, or held it in such manner as to charge the company with liability for the stipulated rent. Armstrong v. Wheeler, 9 Cow., 89; Bedford v. Terhune, 30 N. Y., 453; Carter v. Hammett, 18 Barb., 608.
But no estoppel applies in such case to defeat the right of a party so in possession to show that he is not assignee of the outstanding lease. Quackenboss v. Clark, 12 Wend., 555.
It is contended on the part of the appellant that it had and assumed no rights or ha bility other than such as arose from mere possession. And in connection with the fact that the lease was not included in the judicial sale, reference is made to that portion of the foreclosure judgment which provides that the purchasers “ shall not be required to assume any contracts entered into before the appointment of the receiver, and all such contracts not so assumed by such purchaser or purchasers shall be re-assigned by the receiver to the defendant company” (the Erie railway company). And it appears that by ah instrument of date July 26, 1878, the receiver, referring to the portion last inferred to of the judgment, recites that the purchasers and their successors and assigns, the New York, Lake Erie and Westery Railroad Company, have not assumed, but have injected and refused to assume certain specified executory contracts amongst which is this Woodruff lease, and he re-assigns them to the Erie railway company
This is the re-assignment- referred to in the report of the referee as before mentioned, which report was confirmed by the order of the court of December 30, 1879, made in both actions.
*823 Under the circumstances stated in the instrument of assignment, this re-assignment was provided for by the judgment, and, assuming that it had not before been transferred to the appellant company, this act of the receiver came within the power vested in him. The receiver was the instrument of the court, and it might extend or qualify his power in respect to the property of the insolvent corporation. And no reason appears why the reassignment by the receiver to the Erie railway company, under the direction of the court, may not have been effectual to divest him of the title of the lease as receiver in the Farmers Loan and Trust Company action.
And this assignment to the Erie railway company, afterward, had the approval and confirmation of the court by an order in both that and the Peoples’ action. The final judgment in the last named action is not entirely consistent with such order.
But it may be observed that those two actions were distinct; that the New York, Lake Erie and Western Railroad Company was not a party to either of them, and that all the rights of property were derived from the proceedings in the Farmers Loan and Trust Company action.
The appellant company does not appear to have been a moving party in any sense, for the order of May 3, 1878. And it must be deemed to have been made subject to the rights reserved in the judgment, and therefore did not have the effect to vest title in that company to the property not, embraced within the sale upon the judgment or to the contracts, which the purchasers or their assigns had the right to decline to assume.
There are some circumstances appearing which may have furnished a reason for the provision of the judgment allowing abandonment of some of the mortgaged property and its exclusion from the sale, as applied to this lease, and why the purchaser and the appellant company may not have wished or intended to take it. In February, 1876, the receiver by letter advised Woodruff that he could give no assurances of the early payment of the interest on the bonds of the E. and G. V. R. R. Co.; that it was unreasonable to suppose the parties in interest would consent to operate the road at a loss of §30,000 annually. In May, 1876, the receiver was advised by the opinion of his counsel to the effect that the lease of that company to Woodruff was ultra vires, and that he could not transfer it to the Erie Railway Company. From that time the receiver insisted that he was not liable under the contract. And Woodruff, on his attention being called to it, expressed his belief that such opinion of counsel was sound, and that it settled the question of liability. These circumstances have *824 no importance except as they may throw some light upon, the reason and purpose for the exclusion of the lease from the sale and transfer.
And in respect to the question of the possession of the railroad covered by the lease, it may be observed that Jewett was the president of the Erie Railway Company up to the time he was appointed receiver; that he continued the operation of it as such, and that on the organization of the new company he became its president, and the operation of the road was in like manner continued. During the period within which these changes of administration occurred, the management was continuous and practically under one and the same head. And the road in question constituted the smaller part of a line of road operated during the sanie time.
This situation may also be treated as a circumstance bearing upon the reason for the possession and operation of the road by the appellant company without having taken any assignment of the lease.
So far as the fact could be represented by the statement of the receiver in his instrument of re-assignment to the Erie railway company and by the order of the court confirming it, it does appear that the appellant company refused to assume the obligation of the lease and that the reassignment was made as directed by the judgment. The insolvency of the Erie railway company has no particular-importance upon the question of the validity and effect of such re-assignment. Taylor v. Shum, 1 Bos. & Pull., 21; LeKeux v. Nash, 2 Stra., 1221; Pitcher v. Tovey, 1 Salk., 81; Johnson v. Sherman, 15 Cal., 287. S. C., 76 Am. Rep., 481; Childs v. Clark, 3 Barb. Ch., 52.
A valid transfer of the lease required a written assignment of it to the appellant company. 2 R. S., 135, §§ 6, 8; Bedford v. Terhune, 30 N. Y., 459.
That company went into the possession and operation of the road about the 1st of June, 1878, and in doing so it assumed the obligation to pay rent while it continued. Carter v. Hammett, 18 Barb., 608. And until this liability is. qualified by some effectual arrangement, it is for the same-amount of rent as that of the lessee or assignee from whom such possession is derived.
The obligation of the Erie Railway Company was to pay as rental the interest upon the bonds of the E. and G-. V. R. R. Co., and such, we think the burdenassumed by the appellant-company, while its possession and liability remained unqualified to pay rent. This was the situation of the company until July 1, 1879. The question arises whether from and after that time it was relieved in character or measure, of liability to any, and what, extent to pay the rent.
*825 On the 14th day of May, 1879, the appellant addressed a notice to the president and board of directors of the E. and G. V. R. R. Co., and to Woodruff, stating, amongst other things, that the N. Y., L. E. and W. R. R. Co. “acquired no interest in this property, but merely succeeded to the possession of the receiver. It has since continued the possession and operation cf the road for the public accommodation, but also at a large loss;” that the company is no longer willing to continue at a loss to itself; and that it will cease to operate the road on the 1st day of July, 1879. This notice was received by the E. and G. V. R R. Co., and by Wood-ruff, about the time of its date.
On June 30,1879, a proposition was made by the appellant company to the E. and G. V. R. R. Co. and Woodruff, that at their request, and upon their assent being signified, the company would continue to operate the road as theretofore, “ notwithstanding the surrender of the same on the 1st day of July, 1879,” as proposed in the before mentioned notice, upon the terms and conditions that the road shall be operated as long as the parties shall consent to its operation under the proposal, but either party may terminate it by written notice of withdrawal from the proposal, by which it was expressly understood that so long as the road is run under the proposal, the appellant company should pay the expense of running it, but that it should not be compelled to pay any rent for the use of it; that no obligation was to be implied by the execution of the proposal, the assent to it, nor shall they be construed so as to affect any of the legal rights of any of the parties thereto, as the same should exist on July 1, 1879. Woodruff requested the N. Y , L. E. and W. R. R. Co., to continue to operate the road after July 1, 1879, pursuant to such proposition, to the terms of which he assented, provided the E. and G. V. R. R. Co. assented to the same.
On July 5, 1879, at a meeting of the board of directors of the E. and G. V. R. R. Co., such proposition, with Wood-ruff’s assent thereto, was presented, and it was resolved that the company assent to the terms of the proposition, and request the N. Y., L. E. and W. R. R. Co. to operate the road after the first day of July, 1879, pursuant to it, and that the proposition be submitted to the attorney of the company. And on the receipt of a communication from such attorney which is embraced in the proceedings, it was further resolved, “that the company desires to have its road operated in the future as in the past, * * and that it will assent to any arrangement made by Mr. Woodruff having that end in view, that will not conflict with or change the rights or obligations of Mr. Woodruff and this *826 company respectively under the contract between them, bearing date November 1, 1871,” and directed that a copy of the resolutions be sent to the appellant company. The last named company on July 8, 1879, addressed to the E. and G. V R. R Co. and Woodruff a notice that it would continue to operate the road during the month of July, if desired by them, on the terms mentioned in the proposal of the company and request and assent of Woodruff before mentioned, but that unless some permanent arrangement should be made by the first of August, the company would “withdraw its trains absolutely on that day.”
On July 80, 1879, Woodruff addressed and made to the N. Y.., L E. and W. R. R. Co. an agreement subscribed by him, to the effect that in consideration that the company would not take its trains off the road of the E. and G. V. R. R. Co. on August first, but would continue to operate the same until September first, pending negotiations as to the permanent operation of it, he agreed that the company should have the right to operate it during the month of August free of any rental or obligation to pay any sum whatever for the use of the road during the month"of August. And on January 24, 1880, he agreed that the same terms should continue in force from the 1st day of September, 1879, until May 15, 1880. And on May 12, 1880, he made a further agreement to extend them until September 15, 1880. And on October 5, 1880, a like agreement to extend the same terms until May 15, 1881. And at a meeting of the board of directors of the E. and G. V. R. R. Co., held August 25, 1879, it was resolved that a committee be appointed to confer for purposes mentioned; and that in the meantime the N. Y., L. E. and W. R. R. Co. be requested to continue the operation of the road as theretofore operated, without liabilty to the E. and G. V. R. R. Co., for its use until such conference can be had and a settlement or compromise effected, with a view to avoid further litigation, etc. These facts go to modify the apparent liability of the appellant company to pay rent from and after July 1, 1879, if it was within the power of the E. and G. V. R. R. Co. and Woodruff to do so. We think they had the power to effectually make such arrangement with the appellant company, whatever view may; be taken of the question whether the company was assignee of the lease or of the estate represented by it. There is no privity of contract between a lessor and an assignee, merely as such, of a lease.
A privity of estate only arises out of that relation between them, and that may at any time be terminated or destroyed by means of transfer by the assignee. 1 Washb. Real. Pro, marg. p. 331; Paul v. Nurse, 8 B. & C., 486; *827 Grundin v. Carter, 99 Mass., 16; Walton v. Cronly, 14 Wendell, 64-5; Childs v. Clark, 3 Barb. Ch., 52; Tate v. McCormack, 23 Hun, 218; Johnson v. Sherman, supra.
The relation between the lessor and lessee is that of privity of contract as well as estate, and the lessee cannot, therefore, terminate his liability by assignment of the lease.
In the former case there is no promise of the assignee, and no personal confidence founded upon any contract with him, but his liability to the lessor, is in the fact that the covenants of the lessee run with the the land, and by means of the privity of estate thus produced such liability acccompanies the lease and burdens the title by which it is held.
This relation exists wholly between the lessor and his as signs and the assignee, with the implied covenant in behalf of the lessee that his and each successive assignee will indemnify him against liability for breaches occurring during the continuance of his relation as assignee. Moule v. Garrett, L. R., 5 Exch., 132; affirmed, 7 id., 101. S. C., 1 Moak., 207.
If it be assumed that the liability of an assignee of the lease in question would enure to the benefit of the plaintiffs and might be made available to them as the representatives or trustees of the bondholders, they had no claim upon such liability of an assignee who had made no express covenant which could defeat his right to terminate his relation at pleasure by transfer or relinquishment of his interest. No contract relation in such case could arise between the assignee and the plaintiffs which would interrupt the making of an effectual arrangement between him on the one part and the lessor and lessee on the other part, modifying or qualifying his liability as assignee.
The legal right of a party to assert that the performance of a contract made between two others for his benefit cannot be revoked or modified without his consent rests in the fact of an express promise on the part of the person wdiom he seeks to charge, and thus arises a privity of contract. Such is the doctrine of Lawrence v. Fox (20 N. Y., 268), and kindred cases. And the courts are disinclined to extend the rule beyond the principle adopted in that case. Barlow v. Myers, 64 N. Y., 43; Vrooman v. Turner, 69 id., 280.
The evidence fairly requires the conclusion that the appellant company having concluded to discontinue the possession and operation of this road, was induced by an agreement between it and the lessor to continue operating it upon terms which essentially modified its liability to pay rent. How long that arrangement continued, or when, if ever, it was terminated, we are not advised. If these views *828 are correct, the conclusion of the trial court in respect td the liability of the appellant for rent, and for any deficiency which might arise from the sale upon the judgment in this action, was error, and the exceptions were well taken to-such conclusions.
The views finally reached render it unnecessary to express any further opinion, or definitely determine the question whether the appellant company at any time took the-relation of assignee of the lease or term granted by it.
The further question has relation to the amount with which the appellant company may be charged in this action, upon the facts presented by the evidence.
The receiver was hable as such for the rents which accrued during the time he had the possessian of the road. Woodruff v. The Erie Railway Co, 93 N. Y., 609.
The judgment in The Farmer’s Loan and Trust Company action required that the_ purchasers at the sale should assume the indebtedness incurred by him and indemnify him against liability thereon. And the deed to the purchasers, and by them to the appellant, contained like provisions, by which the liability, of the latter for the amount of such rent is established. The complaint does not contain any distinct allegations upon the covenant in the deed to the company, but we think m view of the allegations and claim made against it in the complaint, and the circumstances of the trial, the liability of the company to pay may be determined in this action.
And it may also be charged with liability for rent from the time it took possession of the road up to July 1, 1879. And in the view taken, the evidence does not for the purposes of this action on behalf of the plaintiff support the claim for any further liability.
This conclusion is reached and announced without prejudice to the right of any party entitled thereto to require the appellant to account for and pay any such rent as it may be liable to pay, for and on account of the possession and operation of the road after the 1st day of July, 1879.
The discussion by counsel has taken a wide range, and by it considerations are ably presented which we think are not available in this action; whatever use and application may be made of them in another action, having in view investigation and relief not deemed pertinent or available in this action.
The judgment should be so modified as to limit the liability of the N. Y. L. E. and W. R. R. Co. for deficiency to a sum equal to the amount of interest upon the bonds of the E. and G. V. R. R. Co., from the 1st day of January, 1875, to thelst day of July, 1879, with interest upon the several installments thereof from the time they respectively became *829 due, that is to say, $37,800, with interest as before mentioned; and, as so modified, affirmed without costs of this appeal to any party, unless the plaintiffs elect to take a new trial, and in that event judgment be reversed and a new trial granted; costs to abide the event.
Haight, Angle and Childs, JJ., concur.