(10 App. Div. 68.)

## DAVIES et al. v. CLARK.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

LANDLORD AND TENANT—COVENANTS FOR IMPROVEMENTS.

    A lessee who covenanted to make certain improvements, and to comply, in making them, with all the requirements of the municipal authorities, cannot

justify his failure to make such improvements on the ground that it was the lessor's duty to submit the plans to the building department, under Laws 1882, c. 410, § 503, providing that plans should be submitted by "the owner or his agent" to the building department, and be approved by it, before alterations were commenced. Ingraham and Van Brunt, JJ., dissenting.

Appeal from judgment on report of referee.

Action by William G. Davies and another, as trustees, against Francis A. Clark, for rent due under a lease for unpaid water rates, and for damages for breach of covenants in the lease. There was a judgment in favor of plaintiffs for $3,553.16 damages and costs, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Dennis McMahon, for appellant.

Herbert Barry, for respondents.

PATTERSON, J. I am not able to concur in the opinion of Mr. Justice INGRAHAM. It inverts both the legal and contract relations of the parties, and throws upon the lessors the burden of performance or the consequences of the nonperformance of the covenants of the lessee. There are two elements entering into the consideration upon which the lease was made by the lessors: First, the covenant of the lessee to pay rent as such; and, second, the covenant of the lessee to make permanent improvements or betterments on the demised premises. Time was of the essence of both these elements. The rent was to be paid at fixed periods, and the improvements were to be made and completed within a specified time, viz. 90 days from the 1st day of May, 1894. The third cause of action set forth in the complaint, and the only one now before the court, is for damages for the breach of the covenant relating to the permanent improvements. The proof shows that the parties had adopted prior to the date of the lease a general plan of those improvements, and the covenant contained in the lease is that the lessee shall, within the time specified, make and complete the improvements according to that plan and its specifications. The principal defense is that the improvements could not be made, because the building department of the city of New York had not approved of the plan; that the work could not be done under it for the want of such approval, and therefore performance was excused. I cannot concur in the view that that situation constitutes in any manner a defense to this action for the breach of the covenant. I agree that the improvements contemplated by that covenant could not lawfully be made without the assent of the building department, and that is as broad a concession as can be required. But it was in no way incumbent upon the owners, as between them and the lessee, to procure the consent. The lease was not entered into on an implied promise that the landlord would take the burden of getting that consent. It is the lessees covenant to build, and that would imply that he assumed the obligation of doing everything necessary to the full performance of his covenant, which would include the submission

of the plans to the proper authorities, and the procurement, or the effort to procure, their permission to go on with and complete the work under those plans and specifications. But nothing is left to inference or implication here. The lessee expressly and in terms assumed, as between him and his lessors, the duty and obligation of procuring the assent, and why that is ignored I cannot understand. Covenants are to be construed according to their plain meaning and obvious intent, and this defendant stipulated that he would "comply with all the requirements of the board of health, municipal authorities, police and fire departments, of the city of New York." That stipulation covers the whole of the transaction. It relates not only to the use of the demised premises, but to everything to be done by the lessee that involved compliance with the requirements of the municipal authorities. Therefore he stood bound to get, or try to get, the plans approved. He never did either of those things within the 90 days. The plans and specifications were not presented, nor were they submitted to the proper "municipal authority," and the covenant was clearly broken by the lessee at the time this action was begun. No plausible excuse is offered even. That the plans were subsequently rejected by the building department, and modified plans necessitated, does not alter the position of the parties at the time the action was brought. Had the original plans and specifications been presented within a proper time, such modifications as were necessary to meet the requirements of the authorities might have been made, and the covenant have been performed substantially within the agreed time; but no attempt was made at performance. The defendant remained passive, allowed the time of performance to expire, and, to escape from liability, relies upon events which happened subsequently, and which in no way could have influenced him during the time fixed for performance. He advisedly made his covenant. He was bound to perform it, or at least try to perform it, or show a valid excuse; and, when the time for performance had fully passed, he had no such excuse. He was grossly in default.

It is further claimed by the defendant (appellant) that the action was prematurely brought, and that no cause of action accrued while he remained in possession, paying rent, or until the lease was ended by expiration of the term or re-entry of the lessors. In Ganson v. Tifft, 71 N. Y. 48, the question arose in an action for damages for failure to rebuild, pursuant to a covenant by which the lessor stipulated that, if a certain elevator were destroyed by fire, he would rebuild it within six months. A fire occurred; the elevator was destroyed; the lessor did not rebuild within the allotted time; and the court said that the lessee's remedy for damages was complete upon the failure to rebuild the elevator. Agate v. Lovenbein, 57 N. Y. 604, and Chamberlain v. Parker, 45 N. Y. 569, recognized the right of the lessor to sue for breach of covenant of lessee as soon as the covenant is broken, and without waiting for the expiration of the tenancy, provided injury has happened in consequence of the breach.

The other defenses interposed by the supplemental answer to the third cause of action depend altogether upon controverted matters of fact, in respect of which there was conflicting evidence. With the referee's conclusions on that evidence I see no reason to interfere. The measure of damages was correctly determined. It is the amount of the decrease in value of the reversion at the time the breach occurred (Chamberlain v. Parker, 45 N. Y. 569, and cases there cited); and there was enough proof on this subject to authorize the finding of the referee.

The judgment should be affirmed, with costs.

WILLIAMS and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting). The sole question in this case arises upon the third cause of action alleged in the complaint, the referee having reported that, after the commencement of the action, the defendant paid to the plaintiffs the amount demanded by the first cause of action, and paid to the proper authorities the amount of the Croton water tax mentioned and set forth in the second cause of action. These payments by the defendant were proved and allowed under a supplemental answer served by permission of the court by which the defendant pleaded payment of the amounts claimed in the first and second cause of action; and, the first and second causes of action thus having been satisfied prior to the decision of the action, no cause of action existed in favor of the plaintiffs against the defendant for these causes of action.

The third cause of action was to recover damages for a breach of a contract made by the defendant, which was contained in a lease executed between the plaintiffs, as trustees, and the defendant, by which the defendant agreed that he would "within ninety days after the commencement of said term, at his own proper costs and expense, make and complete the alterations and repairs provided for by the plans and specifications submitted to, and approved by, the parties of the first part on the 18th day of April, 1894." The supplemental agreement was executed between the parties on the same day. It was called a "Memorandum of alterations to be made by Francis A. Clark in the building situate on the southeast corner of Eighth avenue and 49th St., in the city of New York." By this supplemental agreement, Francis A. Clark agreed to make certain alterations therein specified, the memorandum of specifications and the annexed plans being the specifications and plans referred to in the lease of said premises dated April 18, 1894. This supplemental agreement, after reciting the alterations to be made, contains the following provision: "All the above work will be done in accordance with the rules and regulations of the building department." These two agreements must be read together, and the rights and liabilities of the parties to the agreements must be determined according to the plain intent and meaning of the lease and the memorandum of alterations, read as one instrument; and it seems quite clear, taking these two agreements together, that the defendant's obligations were to make the alterations described within 90 days after the commencement of the term

demised by the lease, which term was to commence upon the 1st day of May, 1894, subject to the rules and regulations of the building department of the city of New York. Under this lease, the defendant was not required to commence such work or to proceed with it in violation of the rules and regulations of such building department.

The regulations as to buildings in the city of New York, and the powers and duties of the building department, are regulated by the consolidation act (chapter 410 of the Laws of 1882). By section 503 of the act it is provided that:

"Before the erection, construction or alteration of any building or part of any building in the city of New York is commenced, the owner or his agent or architect shall submit to the superintendent of buildings a detailed statement in writing of the specifications and a full and complete copy of the plans of such proposed work; * * * and the erection, construction or alteration of said building, or any part thereof, shall not be commenced or proceeded with until said statements and plans shall have been so filed, and approved by the superintendent of buildings."

And by section 505, it is provided that the owner or owners of any buildings or parts thereof, or any architect, builder, carpenter, or mason who may be employed thereon in the commission of any violation of these provisions, shall, for each and every violation and noncompliance, be subject to a penalty.

We think it clear that this contract, subject, as it was, to the rules and regulations of the building department, must have been made subject to these provisions. It is here expressly made the duty of the owner of the building, or his agent or architect, to submit to the superintendent of buildings a detailed statement in writing of the specifications, and a complete copy of the plans of the proposed work; and until this provision had been complied with, and the plans and specifications of the proposed alterations had been submitted to the building department, and the department had approved thereof, the obligation of the defendant to make alterations did not exist. By section 504 the owner of the building would have been liable for a penalty in case the defendant had proceeded with the alterations, unless these provisions had been complied with, and the consent of the department obtained.

There is nothing in the contract itself which throws upon the defendant the burden of obtaining the approval of the department of buildings of these plans and specifications. His obligation was to make the alterations within 90 days after the commencement of the term, subject to the rules and regulations of the building department. The law required the owner, before the commencement of such alterations, to submit the plans and specifications to the department, and obtain its approval; and, while provision is made in the section above referred to for a person other than the owner presenting such plans and specifications to the department, without an express covenant on his part, as between the owner and the contractor, that the contractor will present the plans and specifications to the department for approval, it is difficult to see upon what principle the contractor who has agreed to erect the building is liable for a failure promptly to present such plans and spec-

ifications to the department, and obtain its approval. The parties who contracted must be presumed to have understood the provisions of the law relating to the department, and the obligations of the owner, as well as the contractor, to refrain from commencing any alterations until the department had approved the plans and specifications of such alterations. It will be presumed that neither of the parties to this agreement intended to make these alterations in violation of the law; and for the defendant to have commenced the alterations under the agreement without the approval of the department would have been of no possible advantage to the plaintiffs, but, on the contrary, would have exposed them to the penalties prescribed by section 505 of the consolidation act, before cited. It is not necessary to determine whether or not the defendant proceeded with diligence to obtain the approval of the department of the plans and specifications of the alterations proposed. Until the approval of the department of such plans and specifications had been obtained, it was impossible for the defendant to comply with the terms of the contract to do the work in accordance with the rules and regulations of the building department. From the very nature of the contract itself, it was impossible to perform it until such approval had been obtained; and, until such approval had been obtained, there was no breach of the contract by the defendant.

It appeared from the evidence that at the time of the commencement of this action, not only had such approval not been obtained, but neither the plans nor specifications had been submitted to the department; and the evidence seems to have been uncontradicted that the plans and specifications referred to in the agreement itself never were approved by the department, but that subsequently the department refused its approval, and that, in consequence of such refusal, the contract, by its very terms, became impossible of performance.

Neither of the parties has cited any authority exactly in point. It is, however, a general rule, applicable to all contracts, that "if the subject-matter and agreement be such that the performance of it would either consist of doing a forbidden act, or be so connected therewith as to be in substance a part of the same transaction, the law cannot command the parties to perform that agreement." See 3 Am. & Eng. Enc. Law, p. 869, and cases cited. To have complied with this contract according to its terms, without the consent of the department, would have been to do an act contrary to the express provisions of a statute of this state; and in such a case the court will give no assistance to either of the parties to the agreement. In the absence of an express covenant on the part of the defendant to obtain the approval of the building department of the plans and specifications upon which the work was to be done, there can be, we think, no breach of such contract until the law has been complied with, and the plans and specification* approved by the proper authorities.

We think, therefore, that no cause of action existed in favor of

the plaintiffs against this defendant upon this third cause of action, and the judgment should be reversed, and the complaint dismissed, but, under the circumstances, without costs.

VAN BRUNT, P. J., concurs.