GEORGE CHAMBERLAIN, Appellant, v. JOHN PARKER, Respondent.

The plaintiff leased, to the defendant, certain premises, naming no term and reserving no rent. In the same instrument, the defendant covenanted to sink an oil well, on the premises, of a certain depth and by a fixed day. There was a provision for re-entry on breach of the covenant. The defendant having failed to sink the well,—*Held*, that nominal damages only were recoverable by the plaintiff in an action for this breach, and not the cost of sinking such well on the land.

An instrument in writing conveyed to the defendant all the interest of A., in certain premises, with a right of entry on breach of condition subsequent.—*Held*, that the defendant, by accepting the conveyance, became bound to perform the stipulations on his part recited therein, although he had not executed it. The right of re-entry being attached to the covenants, gave them the force of conditions.

Loss may be sustained, in a legal sense, by the breach of a contract, notwithstanding it can be shown that performance would have been a positive injury to the plaintiff, as in case of a failure to perform an agreement to erect a useless structure upon the plaintiff's own premises; but this

rule does not extend to the erection of a structure upon land in which the plaintiff has no interest, and as to which he is under no obligation.

(Argued May 19th; decided May 30th, 1871.)

. APPEAL from an order of the General Term of the Supreme Court, in the eighth judicial district, reversing the judgment entered on the verdict of a jury in favor of the plaintiff for $2,700, and granting a new trial.

This was an action brought to recover damages for the breach of covenant to put down an oil well. On the 17th of February, 1865, Chamberlain & Knox leased to the defendant, all of their right, title and interest and claim on lot twenty-six, Cornplanter Run, Venango county, Pennsylvania. The lease was signed by both parties, and contained the following clause :

"It is further expressly understood, that the party of the second part (defendant), is to put down a well to the depth of six hundred feet, by the 1st day of July next, unless detained by unvoidable accident, and to pay three dollars a cord for the wood standing on the lot."

No rent was reserved and no term of demise stated.

Chamberlain & Knox assigned all their interest in the lease and land before suit. Upon a failure of the lessee to perform, a right of re-entry was reserved to the lessors. The defendant did not sink the well, and this action was brought to recover damages for the breach. The lessee did not seal the instrument. The jury under the direction of the court, found a verdict for what it would cost to bore such a well, $2,700.

*D. H. Bolles*, for the appellant. The instrument did not require a seal. (2 Parsons on Con., 721; *Haight* v. *Sahler*, 30 Barb., 218; *Worrall* v. *Munn*, 1 Seld., 229.) On the question of damages. (Sedgwick on Dam., 28, 30, 200, 229 ; *Rawlings* v. *Morgan*, 34 L. J. (C. P. N. S.), 564; 18 Com. Bench., N. S., 776; 11 Jur. N. S., 564; 12 L. T. N. S., 348; *Diggs* v. *Dwight*, 17 Wend., 71; *Laraway* v. *Perkins*, 10 N. Y., 371.)

*Angel and Finch,* for the respondent, cited *Bogart* v. *Burkhalter* (2 Barb., 525); *Walker* v. *Smith* (1 Wash. Circuit Ct., 152); 2 Green. Ev., 32, 53; Sedgwick on Dam., 46.

ANDREWS, J. The instrument of February 17, 1865, called a lease, conveyed to the defendant all the interest of Chamberlain & King in the premises described therein, and left in them no reversion but a right of entry merely, on breach of condition subsequent.

The defendant, by accepting the conveyance, became bound to perform the stipulation on his part recited therein, although he had not signed it, and the right of re-entry being attached to the covenants, gave them the force of conditions. (Co. Litt., 217, *n.; Ransom's Admr.* v. *Copland,* 2 Sand. Ch., 250; *Jackson* v. *McClellan,* 8 Cow., 395.)

The instrument was signed and sealed by the grantors, and the omission of the defendant to execute it under seal was of no importance.

It is not denied that the defendant wholly failed to perform his agreement to sink a well on the demised premises, and he became by such default liable to an action for a breach of the agreement.

The only question in the case respecting the measure of damages was the amount which the plaintiff, as assignee of the grantor, was entitled to recover.

The learned judge, before whom the case was tried, held that the measure of damages was the amount it would cost to sink a well on the premises to the stipulated depth, and the verdict was in accordance with the rule adopted by the court.

It is the general rule that in actions for a breach of a covenant or contract, the plaintiff is entitled to recover what he has lost by the default of the defendant.

The law seeks to give compensation and indemnity, and nothing beyond it.

If there are some exceptions to this rule, it is not now material to notice them. (Sedgwick on Damages, 204.)

The measure of damages is to be sought in the contract made by the parties, and where the amount of compensation is not fixed by the contract, then the natural, approximate injury occasioned by the breach of duty is, within the contemplation of the parties, the measure of compensation.

Where compensation is to be made to the plaintiff by delivery of an article of value, the value of the article is the loss sustained by the plaintiff, if the contract is broken.

So where a defendant for a compensation paid should agree to build a house for the plaintiff, the value of the house would measure the damages, if the defendant omitted to perform the contract.

In these and like cases, it is easily seen that actual pecuniary loss has been sustained in consequence of the default of the defendant.

But there may be loss, in a legal sense, sustained by the plaintiff from the breach of a contract by the other party, although it could be seen that performance would have not benefited, but might have injured him. If the owner of land employs and pays another to perform a certain act upon it, or to erect a certain structure, it would be no defence to an action by the employer for a breach of the contract to show that the act to be done or the erection to be made, would injure the land or impair its value.

The owner would be entitled to recover the value of the work and labor which the defendant was to perform, although the thing to be produced had no marketable value.

A man may do what he will with his own, having due regard to the right of others, and if he chooses to erect a monument to his caprice or folly on his premises, and employs and pays another to do it, it does not lie with a defendant who has been so employed and paid for building it, to say that his own performance would not be beneficial to the plaintiff.

It is upon this general view of the subject, that the ruling of the court on the trial is sought to be maintained. The point to be considered is, whether the plaintiff in any sense, actual or legal, has lost by the default of the defendant a

sum equal to the expense of digging the well. The lot embraced in the lease, is located in the oil producing district of Pennsylvania, and the references in it show that the object of the lessee in taking it, was to develop the production of the oil which might be found thereon.

The contract on his part to dig the well, so far as appears in the case, if performed, could result in no benefit to the lessor, except in the possible contingency, that after the well was dug, the default of the defendant in paying for the standing timber on the premises according to his undertaking in the lease, might enable them to re-enter on the premises.

The whole production of the well, if oil should be found, would belong to the defendant for all time, unless the possible ground of forfeiture should occur, just suggested. If this contingency happened, it might be delayed until the supply of oil in the well was exhausted, and the possession of the well had become of no value. The loss or gain in sinking a well was wholly the defendant's. It may be conjectured that the lessor had in view some advantage to other property in the vicinity, from the prosecution of the work of exploration by the defendant. There are no facts shown authorizing this inference, and such a ground of damages, if averred, would be speculative and conjectural, and could furnish no satisfactory basis for a recovery.

The defendant was not paid for digging a well for the plaintiff on his premises. The well, when dug, would be upon the land of the defendant, and its product would be his.

It is idle to say, and the law does not require it to be said, in face of the obvious truth, that the lessors have been damaged to the extent of the cost of digging the well, by the defendant's default. Nor does the defendant gain any undue advantage. The lessor had the right to re-enter, upon the default of the defendant, and he was bound to pay for the wood according to the contract.

It is not probable that any authority can be found precisely in point; but the rule which has been held by the English courts in several cases, to the effect that in an action of cove-

nant by lessor against lessee for non-repair of the demised premises, under an unexpired lease, the proper measure of damages is not the amount required to put the premises in repair, but the amount in which the reversion is injured by the premises being out of repair, tends to support the conclusion that the rule of damages adopted in this case was erroneous. (*Doe* v. *Rowland,* 9 C. & P., 734; *Smith* v. *Post,* 9 Exch., 161; *Turner* v. *Lamb,* 14 M. & W., 412; *Payne* v. *Champion,* 16 id., 541.)

The plaintiff was, upon the proof given, entitled to nominal damages only.

The order of the General Term should be affirmed, and judgment absolute must go for the defendant.

All the judges concurring, judgment accordingly.