AMERICAN STANDARD, INC., et al., Respondents, v HAROLD SCHECTMAN et al., Appellants. (And a Third-Party Action.)

Fourth Department, May 15, 1981

APPEARANCES OF COUNSEL

*Kavinoky, Cook, Sandler, Gardner, Wisbaum & Lipman (Wayne Wisbaum of counsel), for appellants.*

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor Fuzak of counsel), for respondents.*

**OPINION OF THE COURT**

HANCOCK, JR., J.

■ Plaintiffs have recovered a judgment on a jury verdict of $90,000 against defendant for his failure to complete grading and to take out certain foundations and other subsurface structures to one foot below the grade line as promised. Whether the court should have charged the jury, as defendant Schectman requested, that the difference in value of plaintiffs' property with and without the promised performance was the measure of the damage is the main point in his appeal.[1] We hold that the request was properly denied and that the cost of completion—not the difference in value—was the proper measure. Finding no basis for reversal, we affirm.

Until 1972, plaintiffs operated a pig iron manufacturing plant on land abutting the Niagara River in Tonawanda. On the 26-acre parcel were, in addition to various industrial and office buildings, a 60-ton blast furnace, large lifts, hoists and other equipment for transporting and storing ore, railroad tracks, cranes, diesel locomotives and sundry implements and devices used in the business. Since the 1870's plaintiffs' property, under several different owners, had been the site of various industrial operations. Having decided to close the plant, plaintiffs on August 3, 1973 made a contract in which they agreed to convey the buildings and

---

1. The judgment in the amount of $122,434.60 including interest and costs is jointly and severally against both defendants, viz., Harold Schectman, the contracting party, and the company which issued the performance bond, United States Fire Insurance Company. Inasmuch as the interests of both defendants here are identical, for the purpose of this appeal and for the sake of simplicity we treat the defendants as one: i.e., the contracting party, Harold Schectman. A third-party action commenced by the bonding company on an indemnity agreement between it and defendant Schectman and others is not part of this appeal. The appeal is also taken from an order denying defendant's motion to set aside the verdict and for a new trial.

other structures and most of the equipment to defendant, a demolition and excavating contractor, in return for defendant's payment of $275,000 and his promise to remove the equipment, demolish the structures and grade the property as specified.

We agree with Trial Term's interpretation of the contract as requiring defendant to remove all foundations, piers, headwalls, and other structures, including those under the surface and not visible and whether or not shown on the map attached to the contract, to a depth of approximately one foot below the specified grade lines.[2] The proof from plaintiffs' witnesses and the exhibits, showing a substantial deviation from the required grade lines and the existence above grade of walls, foundations and other structures, support the finding, implicit in the jury's verdict, that defendant failed to perform as agreed. Indeed, the testimony of defendant's witnesses and the position he has taken during his performance of the contract and throughout this litigation (which the trial court properly rejected), viz., that the contract did not require him to remove all subsurface foundations, allow no other conclusion.

We turn to defendant's argument that the court erred in rejecting his proof that plaintiffs suffered no loss by reason of the breach because it makes no difference in the value of the property whether the old foundations are at grade or one foot below grade and in denying his offer to show that plaintiffs succeeded in selling the property for $183,000— only $3,000 less than its full fair market value. By refusing this testimony and charging the jury that the cost of completion (estimated at $110,500 by plaintiffs' expert), not diminution in value of the property, was the measure of

---

2. Paragraph 7 of the agreement states in pertinent part: "7. After the Closing Date, Purchaser shall demolish all of the Improvements on the North Tonawanda Property included in the sale to Purchaser, cap the water intake at the pumphouse end, and grade and level the property, all in accordance with the provisions of Exhibit 'C' and 'C₁' attached hereto."

Exhibit C (notes on demolition and grading) contains specifications for the grade levels for four separate areas shown on Map C₁ and the following instruction: "Except as otherwise excepted all structures and equipment including foundations, piers, headwalls, etc. shall be removed to a depth approximately one foot below grade lines as set forth above. Area common to more than one area will be faired to provide reasonable transitions, it being intended to provide a reasonably attractive vacant plot for resale."

damage the court, defendant contends, has unjustly permitted plaintiffs to reap a windfall at his expense. Citing the definitive opinion of Judge CARDOZO in *Jacob & Youngs v Kent* (230 NY 239), he maintains that the facts present a case "of substantial performance" of the contract with omissions of "trivial or inappreciable importance" (p 245) and that because the cost of completion was "grossly and unfairly out of proportion to the good to be attained" (p 244), the proper measure of damage is diminution in value.

The general rule of damages for breach of a construction contract is that the injured party may recover those damages which are the direct, natural and immediate consequence of the breach and which can reasonably be said to have been in the contemplation of the parties when the contract was made (see 13 NY Jur, Damages, §§ 46, 56; *Chamberlain v Parker*, 45 NY 569; *Hadley v Baxendale*, 9 Exch [Welsby, Hurlstone & Gordon] 341; Restatement, Contracts, § 346). In the usual case where the contractor's performance has been defective or incomplete, the reasonable cost of replacement or completion is the measure (see *Bellizzi v Huntley Estates*, 3 NY2d 112; *Spence v Ham*, 163 NY 220; *Condello v Stock*, 285 App Div 861, mod on other grounds 1 NY2d 831; *Along-The-Hudson Co. v Ayres*, 170 App Div 218; 13 NY Jur, Damages, § 56, p 502; Restatement, Contracts, § 346). When, however, there has been a substantial performance of the contract made in good faith but defects exist, the correction of which would result in economic waste, courts have measured the damages as the difference between the value of the property as constructed and the value if performance had been properly completed (see *Jacob & Youngs v Kent, supra; Droher & Sons v Toushin*, 250 Minn 490; Restatement, Contracts, § 346, subd [1], par [a], cl [ii], p 573; comment *b*, p 574; 13 NY Jur, Damages, § 58; Ann., 76 ALR2d 805, § 4, pp 812-815). *Jacob & Youngs* is illustrative. There, plaintiff, a contractor, had constructed a house for the defendant which was satisfactory in all respects save one: the wrought iron pipe installed for the plumbing was not of Reading manufacture, as specified in the contract, but of other brands of the same quality. Noting that the breach was unintentional and the consequences of the omission trivial,

and that the cost of replacing the pipe would be "grievously out of proportion" *(Jacob & Youngs v Kent, supra,* p 244) to the significance of the default, the court held the breach to be immaterial and the proper measure of damage to the owner to be not the cost of replacing the pipe but the nominal difference in value of the house with and without the Reading pipe.

Not in all cases of claimed "economic waste" where the cost of completing performance of the contract would be large and out of proportion to the resultant benefit to the property have the courts adopted diminution in value as the measure of damage. Under the Restatement rule, the completion of the contract must involve "unreasonable economic waste" and the illustrative example given is that of a house built with pipe different in name but equal in quality to the brand stipulated in the contract as in *Jacob & Youngs v Kent* (230 NY 239, *supra)* (Restatement, Contracts, § 346, subd [1], par [a], cl [ii], p 573; Illustration No. 2, p 576). In *Groves v Wunder Co.* (205 Minn 163), plaintiff had leased property and conveyed a gravel plant to defendant in exchange for a sum of money and for defendant's commitment to return the property to plaintiff at the end of the term at a specified grade—a promise defendant failed to perform. Although the cost of the fill to complete the grading was $60,000 and the total value of the property, graded as specified in the contract, only $12,160 the court rejected the "diminution in value" rule, stating: "The owner's right to improve his property is not trammeled by its small value. It is his right to erect thereon structures which will reduce its value. If that be the result, it can be of no aid to any contractor who declines performance. As said long ago in Chamberlain v. Parker, 45 N.Y. 569, 572: 'A man may do what he will with his own, * * * and if he chooses to erect a monument to his caprice or folly on his premises, and employs and pays another to do it, it does not lie with a defendant who has been so employed and paid for building it, to say that his own performance would not be beneficial to the plaintiff.' " *(Groves v Wunder Co., supra,* p 168.)

The "economic waste" of the type which calls for application of the "diminution in value" rule generally entails defects in construction which are irremediable or which may

not be repaired without a substantial tearing down of the structure as in *Jacob & Youngs* (see *Bellizzi v Huntley Estates*, 3 NY2d 112, 115, *supra; Groves v Wunder Co., supra; Slugg Seed & Fertilizer v Paulson Lbr.*, 62 Wis 2d 220; Restatement, Contracts, § 346, subd [1], Illustration Nos. 2, 4, pp 576-577; Ann., 76 ALR2d 805, § 4, pp 812-815).

Where, however, the breach is of a covenant which is only incidental to the main purpose of the contract and completion would be disproportionately costly, courts have applied the diminution in value measure even where no destruction of the work is entailed (see, e.g., *Peevyhouse v Garland Coal & Min. Co.*, 382 P2d 109 [Okla], cert den 375 US 906, holding [contrary to *Groves v Wunder Co., supra*] that diminution in value is the proper measure where defendant, the lessee of plaintiff's lands under a coal mining lease, failed to perform costly remedial and restorative work on the land at the termination of the lease. The court distinguished the "building and construction" cases and noted that the breach was of a covenant incidental to the main purpose of the contract which was the recovery of coal from the premises to the benefit of both parties; and see *Avery v Fredericksen & Westbrook*, 67 Cal App 2d 334).

It is also a general rule in building and construction cases, at least under *Jacob & Youngs (supra)* in New York (see *Groves v Wunder Co., supra;* Ann., 76 ALR2d 805, § 6, pp 823-826), that a contractor who would ask the court to apply the diminution of value measure "as an instrument of justice" must not have breached the contract intentionally and must show substantial performance made in good faith *(Jacob & Youngs v Kent, supra,* pp 244, 245).

In the case before us, plaintiffs chose to accept as part of the consideration for the promised conveyance of their valuable plant and machines to defendant his agreement to grade the property as specified and to remove the foundations, piers and other structures to a depth of one foot below grade to prepare the property for sale. It cannot be said that the grading and the removal of the structures were incidental to plaintiffs' purpose of "achieving a reasonably attractive vacant plot for resale" (cf. *Peevyhouse v Garland Coal & Min. Co., supra)*. Nor can defendant maintain that the damages which would naturally flow from his failure to

do the grading and removal work and which could reasonably be said to have been in the contemplation of the parties when the contract was made would not be the reasonable cost of completion (see 13 NY Jur, Damages, §§ 46, 56; *Hadley v Baxendale,* 9 Exch [Welsby, Hurlstone & Gordon] 341, *supra).* That the fulfillment of defendant's promise would (contrary to plaintiffs' apparent expectations) add little or nothing to the sale value of the property does not excuse the default. As in the hypothetical case, posed in *Chamberlain v Parker* (45 NY 569, *supra)* (cited in *Groves v Wunder Co.,* 205 Minn 163, *supra),* of the man who "chooses to erect a monument to his caprice or folly on his premises, and employs and pays another to do it", it does not lie with defendant here who has received consideration for his promise to do the work "to say that his own performance would not be beneficial to the plaintiff[s]" *(Chamberlain v Parker, supra,* p 572).

Defendant's completed performance would not have involved undoing what in good faith was done improperly but only doing what was promised and left undone (cf. *Jacob & Youngs v Kent,* 230 NY 239, *supra;* Restatement, Contracts, § 346, subd [1], Illustration No. 2, p 576). That the burdens of performance were heavier than anticipated and the cost of completion disproportionate to the end to be obtained does not, without more, alter the rule that the measure of plaintiffs' damage is the cost of completion. Disparity in relative economic benefits is not the equivalent of "economic waste" which will invoke the rule in *Jacob & Youngs v Kent (supra)* (see *Groves v Wunder Co., supra).* Moreover, faced with the jury's finding that the reasonable cost of removing the large concrete and stone walls and other structures extending above grade was $90,000, defendant can hardly assert that he has rendered substantial performance of the contract or that what he left unfinished was "of trivial or inappreciable importance" *(Jacob & Youngs v Kent, supra,* p 245). Finally, defendant, instead of attempting in good faith to complete the removal of the underground structures, contended that he was not obliged by the contract to do so and, thus, cannot claim to be a "transgressor whose default is unintentional and triv-

ial [and who] may hope for mercy if he will offer atonement for his wrong" *(Jacob & Youngs v Kent, supra,* p 244). We conclude, therefore, that the proof pertaining to the value of plaintiffs' property was properly rejected and the jury correctly charged on damages.

The judgment and order should be affirmed.

SIMONS, J. P., DOERR, DENMAN and SCHNEPP, JJ., concur.

Judgment and order unanimously affirmed, with costs.