Joseph NELSON, III, Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Appellee.

No. 97–CV–1805.

District of Columbia Court of Appeals.

Submitted June 8, 1999.
Decided May 18, 2000.

Charles Krikawa, IV, College Park, MD, was on the brief for appellant.

Paul V. Crawford was on the brief for appellee.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge:

This appeal arises from a breach of contract action filed by Joseph Nelson against Allstate Insurance Company. Nelson contends that the trial court erred in permitting Allstate to raise a new defense on the morning of trial, contrary to the terms of the pretrial order, and in granting Allstate's post-verdict motion to amend the judgment. Finding no abuse of discretion and no legal error, we affirm.

## I

On November 24, 1994, Nelson was driving an ambulance owned by the District of Columbia when it was struck by a car driven by an uninsured motorist named John Henry Lewis. Nelson was insured under a policy issued by Allstate which included coverage for injuries resulting from accidents involving uninsured motorists, as well as injuries incurred while the insured person was driving a motor vehicle owned by a third party, provided that the insured person was not driving a vehicle which was "furnished for the regular use of [the insured person] or any resident relative." In a section captioned "Limits of Liability," the insurance contract also stated:

> Damages payable will be reduced by ... all amounts payable under any workers compensation law, disability benefits law, or similar law, Automobile Medical Payments, or any similar automobile medical payments coverage.

Coverage for bodily injuries caused by uninsured motorists was capped at $50,000 per insured person.

About nine months after the accident, Nelson filed suit against both Lewis and Allstate, claiming that Lewis was negligent and that Allstate breached the insurance contract by refusing to make payment as required by the uninsured motorist provision. Nelson asked for money damages in the amount of $200,000 from each defendant.[1]

In its answer to Nelson's complaint, Allstate asserted that Nelson's claim was not covered by the policy because he was driving an ambulance owned by the District of Columbia government at the time of the accident, and because the policy did not provide uninsured motorist coverage when the policyholder was "driving a motor vehicle provided by another for his regular use." In the joint pretrial statement, which the court adopted as its pretrial order, Allstate declared its intention to introduce "[t]he applicable Allstate Insurance Company policy" as an exhibit at trial.

On the morning of trial, the court asked counsel for Allstate, "What is your defense? I need to understand it so I can explain it to the jury." Allstate's attorney responded that the defense would be that "[a]n uninsured motorist policy with Allstate does not cover non-owned vehicles regularly provided for the use of another." Shortly thereafter, however, Allstate raised for the first time the issue of an offset for workers' compensation benefits. Nelson's attorney objected, arguing that this was a defense that should have been raised at the pretrial stage. The court ruled that because Nelson was "not entitled to recover more than he has a right to recover under the contract Allstate gave him," it would let the jury determine the total amount of damages to which Nelson was entitled, and then reduce the award by any amount that Nelson had received in workers' compensation benefits. Allstate did not object to this proposal. Nelson's counsel continued to object on the ground that the matter should have been raised earlier. He also complained that there was "no present evidence of what has been paid and what hasn't," but he conceded that Nelson "would not have a right to

1. Lewis never participated in the case and eventually was removed as a defendant after he filed for bankruptcy.

recover more than the limits of the coverage."

In its verdict the jury found Allstate liable under the policy because the ambulance Nelson was driving on the day of the accident was not furnished for his regular use. It awarded him $12,200 for medical expenses, $30,000 for lost wages up to the time of the trial, and $30,000 for pain and suffering, a total of $72,200.

After hearing the jury's verdict, the trial court said, "I believe that concludes the matter." When counsel for Allstate interjected to remind the court that "we agreed we were going to offset the verdict in according [sic] to the contract," the court responded by asking counsel to file a motion requesting the offset. Nelson's attorney pointed out that the only evidence in the record of any workers' compensation benefits received by Nelson was a $5,892 payment to one of his doctors, whereupon counsel for Allstate asserted that Nelson had also received benefits for lost wages. The court replied:

> Then you need to file a motion because if he has received money from workmen's comp and the contract is explicitly exclusive, then it would be appropriate for me to offset it. Otherwise, it doesn't make sense. And if you didn't raise that with me and therefore I didn't address it, then you should have because he's not entitled to recover more than the contract allows.

Allstate accordingly filed a motion to alter or amend the verdict under Super. Ct. Civ. R. 59(e), arguing that it was entitled to an offset for the amount of medical bills and lost wages that had been paid to Nelson as workers' compensation by the District of Columbia Department of Employment Services. Although the actual amount of benefits received by Nelson was not yet known,[2] Allstate noted that Nelson

had admitted in his deposition that his biweekly workers' compensation payment was $767.00, and that he had testified at trial that he had been out of work for two years and fifteen weeks since the accident. Relying on these statements, Allstate calculated that Nelson had been paid a total of $45,253.00 in workers' compensation benefits.

At the hearing on its Rule 59(e) motion, Allstate maintained that the jury award should be reduced to zero, since the insurance policy limited the maximum recovery to $50,000 per person and Nelson had already received a total of $51,045 in compensation, including the payment of $5,892 of his medical bills. Allstate's position was "that the total amount that could be a verdict in this case would be $50,000, including the pain and suffering." Any amounts paid in workers' compensation benefits should then be deducted from the $50,000, with only the remainder, if any, going to Nelson.

Nelson's counsel conceded that the $5,892 medical bill should be deducted from the award of medical expenses, but complained that the issue of offsetting the award for lost wages was never raised in discovery or in the pretrial conference. In addition, he argued that Allstate should be precluded from obtaining an offset of the jury award for disability benefits paid for lost wages because there was no evidence of any such payments in the record. The court rejected this argument, citing its pretrial ruling that such evidence would not be admissible during the trial because of the collateral source rule, but that it would offset the jury's award after the conclusion of the trial. The court then permitted Allstate to introduce additional evidence into the record in order to establish the total amount of workers' compensation payments.

---

2. Allstate had attempted to ascertain this amount during discovery, but in his answers to Allstate's interrogatories, Nelson said that the amount of medical payments, lost wage payments, and other payments made on his workers' compensation claim was "unknown."

Shortly thereafter the court issued an order directing the Department of Employment Services to produce the records of benefit payments made to Nelson up to March 3, 1997, the date the trial began. After reviewing those records, counsel for Allstate told the court that they established that Nelson had been paid a total of $43,721.92 in disability compensation payments for lost wages through March 1, 1997.

In a subsequent order, the trial court granted Allstate's Rule 59(e) motion for an offset of damages. The court reasoned that Nelson could not complain of surprise because he had filed suit under the contract and therefore must have known its terms, because the contract was listed as an exhibit in the Consent Pretrial Order, and because the relevant terms of the contract were introduced into evidence at the trial. As for Allstate's failure to present any evidence of the amount of workers' compensation benefits paid to Nelson until after the trial, the court noted:

> The issue of whether any damages awarded by a jury should be reduced by amounts previously paid pursuant to workmen's compensation or disability law was raised before the trial began. Neither side knew what amount of money, if any, would be offset.

The court also observed that Nelson's counsel was in a position to obtain from his client an estimate of how much he had received in benefits. It went on to say:

> Defendant [Allstate] did not waive the ... contract term [providing for an offset]. The term was known to the parties; it was part of the contract listed in the Joint Pretrial Statement, which was adopted by the Court in its Consent Pretrial Order, and it was introduced as evidence in the trial.

The court then subtracted the $43,721.92 paid for lost wages and the $5,892.00 paid in medical expenses from $50,000, the maximum amount that could be recovered under the contract, thereby reducing the amount awarded to Nelson to $386.08. This appeal followed.

## II

### A. The Pretrial Ruling

■ Nelson claims that the trial court erred by permitting Allstate to raise the issue of an offset for workers' compensation benefits on the morning of the trial even though it had failed to assert any such defense either in its answer or in the joint pretrial statement, which the court adopted as its pretrial order. In response, Allstate argues that the trial court merely held Nelson to his burden of proof to establish the amount of damages to which he was entitled under the terms of the contract.

■ Super. Ct. Civ. R. 16 governs pretrial proceedings in civil cases, and subsection (g) of the rule, in particular, provides for the entry of a pretrial order and specifies in some detail what the order should contain. The rule "contemplate[s] that fair disclosure will be made to remove cases from the realm of surprise, and both parties generally are bound by the pretrial order." *Taylor v. Washington Hospital Center*, 407 A.2d 585, 592 (D.C.1979). However, we have held that "[w]hile [Rule 16] is intended to remove cases from the 'realm of surprise,' it does not contemplate or require that rigid adherence to the pretrial order must always be exacted." *Clarke v. District of Columbia*, 311 A.2d 508, 511 (D.C.1973) (citations omitted). Hence the decision "[w]hether to allow a party to go beyond the bounds of the pretrial order ... is a matter left to the court's discretion, to be exercised in light of Rule 16's language authorizing modification in the proper case 'to prevent manifest injustice.'" *Taylor*, 407 A.2d at 592 (citations omitted); *see* Super. Ct. Civ. R. 16(g) (providing that a pretrial order "may be modified at the discretion of the court for good cause shown and shall be modified if necessary to prevent manifest injustice"). In determining whether the trial court

abused its discretion under this rule, "[t]he most important factor appears to be whether the opposing party was surprised or ... prejudiced by the requested change." *Daniels v. Beeks,* 532 A.2d 125, 128 (D.C.1987); *accord, Habtu v. Woldemichael,* 694 A.2d 846, 849 (D.C.1997).

In the case at bar, the trial court's reliance on the plain language of the contract did not subject Nelson to any unfair surprise or undue prejudice. The plaintiff in a breach of contract action always bears "the burden of proving that he has been damaged and the amount of such damage." *Rhodes v. Ritz Camera Centers,* 151 A.2d 262, 263 (D.C.1959); *see Romer v. District of Columbia,* 449 A.2d 1097, 1100 (D.C. 1982). Thus the liability cap and the offset provision of the contract were central to the merits of the case. While Allstate probably should have stated its intention to rely on these clauses, as part of its defense, in its answer to Nelson's complaint and in the pretrial statement, Nelson was neither surprised nor unfairly prejudiced as a result of Allstate's failure to do so. As the trial court recognized, Nelson sued on the contract and therefore could not plausibly claim ignorance of its terms.[3] Furthermore, refusal to enforce these provisions would have had the unjust result of allowing Nelson to obtain more than he was entitled to receive under the contract. We hold, therefore, that the trial court did not abuse its discretion by permitting Allstate belatedly to raise an issue not raised during the pretrial proceedings.

### B. The Rule 59(e) Motion

◼ Nelson also faults the trial court for granting Allstate's motion to alter the judgment by applying the offset for workers' compensation payments and the $50,000 cap on liability after the jury returned its verdict. He claims that the court erred by allowing Allstate at that point to adduce evidence of benefits paid to Nelson as compensation for lost wages even though Allstate had failed to introduce such evidence during the trial.

Just before the trial started, the court expressly said that it would apply the offset for workers' compensation benefits after the jury returned its verdict. Allstate cannot now be penalized for relying on that ruling and waiting until after the trial to present evidence of the amount of benefits actually paid to Nelson. Moreover, it is undisputed that the precise amount paid was unknown to either party until the Department of Employment Services released its records of Nelson's claim, which it did not do until several months after the trial had ended.[4]

The terms of the insurance contract are clear and unambiguous. Nelson was not entitled to an award of more than $50,000, nor was he entitled to recover damages under the contract for amounts he received as workers' compensation benefits. While Allstate should have been more forthcoming in stating its intention to rely on these provisions of the contract, the trial court did not abuse its discretion by enforcing them despite Allstate's failure to mention them earlier.

◼ A decision to grant or deny a motion under Rule 59(e) is entrusted to the sound discretion of the trial court and may be reversed only for abuse of that discretion. *See In re Prince,* 85 F.3d 314, 324 (7th Cir.), *cert. denied,* 519 U.S. 1040, 117 S.Ct. 608, 136 L.Ed.2d 534 (1996); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983). On the record before us, we

---

**3.** Nelson complains that "[t]he uninsured motorist endorsement was almost five pages long and contained over forty separate paragraphs." Since Nelson's entire case depended on those five pages and forty paragraphs, we do not think it unreasonable to impute to him knowledge of what they contained.

**4.** Contrary to the assertion in Nelson's brief, Allstate did seek to obtain this evidence before trial through interrogatories asking Nelson how much he had been paid in medical and disability payments. Nelson responded, however, that these amounts were unknown. See note 2, *supra.*

find no such abuse. The judgment ·is accordingly

*Affirmed.*