**ALLSTATE INSURANCE COMPANY,**
Appellant,

v.

**Ruth RAMOS, Appellee.**

No. 99–CV–1284.

District of Columbia Court of Appeals.

Argued June 1, 2001.
Decided Sept. 27, 2001.

Quentin R. Corrie, Fairfax, VA, for appellant.

Jonathan Zucker, with whom Patricia Daus was on the brief, Washington, D.C., for appellee.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

The principal question presented in this appeal is whether the trial judge properly declined to disturb a jury award of $45,000 in favor of the plaintiff, Ruth Ramos, under the uninsured motorist provisions of a policy issued by Allstate Insurance Company to Ms. Ramos' husband, Jose Cleto Munoz. In a post-trial motion ostensibly filed pursuant to Super. Ct. Civ. R. 59(e), Allstate alleged for the first time that the uninsured motorist protections on which Ms. Ramos based her claim were limited by the terms of the policy to $25,000 per person and $50,000 per accident. Ms. Ramos was the only person injured in the accident that gave rise to this suit, and Allstate requested that the verdict be reduced to conform to the limits of the policy. The judge denied Allstate's motion

without a hearing. We reverse and remand for further proceedings.

## I.

## BACKGROUND

On October 27, 1996, Ms. Ramos, who was then twenty-two years of age, was riding in the passenger seat of a 1987 Nissan XE pick-up truck owned and driven by her husband when the vehicle was struck by a 1995 Isuzu operated by Scott Singleton. As a result of the collision, Ms. Ramos suffered injuries to her head, neck, and back. Mr. Munoz was insured by Allstate, and a claim was filed with Allstate pursuant to his policy.

On January 23, 1998, after negotiations with the insurer had proved fruitless, Ms. Ramos filed suit for breach of contract against Allstate. In essence, Ms. Ramos claimed that she was a third-party beneficiary of the insurance contract between her husband and Allstate, and that, under her husband's policy, she was entitled to compensation for injuries suffered as a result of the negligence of Mr. Singleton, an uninsured motorist. Mr. Munoz' policy was not attached to the complaint, and Ms. Ramos' pleading contained no reference to any limits on the amount which the policy required Allstate to pay. Ms. Ramos asked the court to award her damages of $30,000, together with the costs of the action "and any other relief that this court deem[s] just and proper."

On July 15, 1998, Ms. Ramos' attorney served Allstate with a request for admissions. Allstate responded six days later and formally admitted, *inter alia*, that all of the following statements were true:

1. The defendant issued an automobile liability policy to Jose Cleto Munoz.

2. The policy was in effect on 10/27/96.

3. The policy provided for uninsured motorist benefits.

4. A 1987 Nissan XE pick-up truck was a covered vehicle under the policy.

5. Mr. Munoz was involved in an accident on 10/27/96 on Sherman Avenue, N.W.[,] in the District of Columbia.

6. Mr. Munoz was driving the Nissan pick-up truck at the time of the accident.

7. Plaintiff, Ruth Ramos, was riding as a front seat passenger in the Nissan at the time of the accident.

8. The other involved vehicle was a 1995 Isuzu.

9. Scott Singleton was the driver of the Isuzu.

10. The Isuzu struck the passenger side of Jose Cleto Munoz's Nissan.

11. Plaintiff was injured as a result of the accident.

12. The driver of the Isuzu was the sole cause of the accident.

13. The Isuzu was not insured by a motor vehicle liability policy applicable to the accident.

14. Mr. Singleton was an uninsured motorist at the time of the occurrence.

15. Mr. Munoz's Nissan pick-up truck was damaged in the accident.

Allstate's admissions effectively resolved all of the potential factual issues between the parties except the amount of damages to which Ms. Ramos was entitled.

The case was tried to a jury on June 14 and 15, 1999. The insurance policy upon which the claim was founded was not introduced into evidence, and no reference was made by either party or by the court to the limits of the uninsured motorist protection in the Allstate policy. Ms. Ramos and Mr. Munoz testified for the plaintiff regarding the accident and Ms. Ramos' injuries and, over Allstate's objection, the court admitted certain medical records. Allstate's responses to Ms. Ramos' request for admissions were also received in evidence. At the conclusion of the plaintiff's case, Allstate moved to "dismiss the complaint" upon the sole ground that Mr. Singleton, the uninsured driver, had not been joined as a party defendant. *Cf.* Super. Ct. Civ. R. 19(a). The judge denied the motion, and Allstate rested without presenting any evidence.

■ During the course of her charge to the jury, the judge explained that under its contract with the policyholder, Allstate was liable for any injuries to Ms. Ramos proximately caused by an uninsured motorist's negligence. The judge instructed the jurors, *inter alia,* that

[y]ou may award damages for any of the following items that you find the uninsured motorist negligence proximately caused. The extent and duration of any physical injury sustained by the Plaintiff, the effects that any physical injury have on the overall and physical and emotional well-being of the Plaintiff.

Any physical pain and emotional distress that the Plaintiff has suffered in the past. Any inconvenience that the Plaintiff has experienced. Any medical expenses incurred by the Plaintiff. Any loss of earnings incurred by the Plaintiff, and you should know that any damages you award to Plaintiff for medical expenses and pain and suffering will not be subject to income taxes.

There was no objection to this instruction, and neither party informed either the judge or the jury of the cap on the policy's uninsured ·motorist coverage. Following deliberations, the jury found, in conformity with the uncontradicted testimony and Allstate's admissions, that Singleton was negligent and that his negligence was the proximate cause of the collision and of Ms. Ramos' injuries. The jury awarded Ms. Ramos $45,000 in damages. On June 24,

1999, the clerk entered judgment in that amount in conformity with the verdict. Allstate did not appeal from the judgment.

## II.

### POST–TRIAL MOTIONS

■ On June 29, 1999, Allstate filed two separate motions addressing the trial court's judgment. In the first of these motions, which we shall call Motion No. 1, Allstate asked the court to award judgment notwithstanding the verdict (JNOV). Motion No. 1 was based solely on the ground that Mr. Singleton had not been joined as a party defendant. According to Allstate, Mr. Singleton was an indispensable party because "[t]he statutory scheme requires that the liability of the uninsured driver be established before Allstate has a duty to pay the uninsured judgment to the Plaintiff." In its legal memorandum accompanying the motion, Allstate cited no authority in support of this proposition,[1] nor did Allstate acknowledge that in its responses to the plaintiff's request for admissions, it had admitted that Ms. Ramos' injuries were proximately caused by Mr. Singleton's negligence. The trial judge denied Motion No. 1 in an order signed on August 20, 1999 and docketed four days later. Allstate did not appeal from the order denying Motion No. 1.

Allstate's second motion, which we shall call Motion No. 2, was a "contested motion for a new trial." Motion No. 2 contained several contentions, only one of which requires plenary consideration on this appeal. In paragraph 5 of that motion, Allstate "move[d] the [c]ourt under [D.C.Super. Ct. Civ.] Rule 59(e) to conform the judgment to the amount of the policy coverage under uninsured motorist coverage. In this case it is 25/50." On July 16, 1999, Allstate provided the court with a certified copy of the declaration page of Mr. Munoz' policy. With respect to "Uninsured Motorists," the policy states:

BODILY INJURY

$25,000 EACH PERSON $50,000 EACH ACCIDENT

Ms. Ramos filed an opposition to Motion No. 2 in which she asserted, *inter alia,* that "Allstate's attempt to introduce the insurance contract comes too late." (Internal quotation marks omitted.) Ms. Ramos also argued that if the policy had been introduced at trial, then

> plaintiff might have claimed that the contract produced was not the same contract which plaintiff's husband signed; or that the limitation clause was inserted after he had signed the contract or purposely concealed at the time of signing, thereby creating a fact question. Similarly, whether or not plaintiff could have successfully asserted any legal or equitable defenses to the contractual limitation was a jury question. Conceivably had defendant asserted the contractual limitation at trial plaintiff might have asserted that the limitation should not be enforced for a variety of reasons, including that there had been "fraud in the inducement" by the selling agent, or that at the time the contract was entered the agent made "misrepresenta-

---

1. In a subsequent "Reply Memorandum," Allstate relied on *Wilcox v. State Farm Ins. Co.,* No. 90–0910 (D.D.C. Jan. 16, 1991), a case decided under Virginia law. As stated in *Wilcox,* slip. op. at 3, "[t]he courts in Virginia have held that judgment against the uninsured motorist is the event which determines legal entitlement to recovery. *Midwest Mut.* *Ins. Co. v. Aetna Cas. & Surety Co.* [216 Va. 926], 223 S.E.2d 901, 904 (Va.1976)." (Internal quotation marks omitted.) For the reasons stated in footnote 7, *infra,* the citation of the Virginia precedents, which represent a minority approach in any event, provides no solace to Allstate on this appeal.

tions" regarding the applicability of the limitations, or that due to language difficulties they did not understand the limitations, therefore, the limitations should not be applied under the doctrine of "mistake." Because the existence and applicability of the claimed contractual limitation on damages presents potential jury questions, judgment cannot be altered in accordance with Rule 59(e).

On August 19, 1999, the judge signed a brief order denying Motion No. 2; the order was docketed on August 24, 1999.[2] The judge made no explicit mention in her order of the alleged limits of the policy's coverage. On September 29, 1999, Allstate filed a notice of appeal "from the [o]rder of this [c]ourt entered on August 19, 1999 and mailed and docketed by this court on August 24, 1999." Thus, the only notice of appeal filed by Allstate in connection with this litigation was from the order denying Motion No. 2.

## III.

### LIMITS OF THE POLICY

There is a certain sense of unreality about the manner in which this case was presented at trial by the parties. Ms. Ramos' right to recover from Allstate for breach of contract depends entirely on the provisions of an insurance policy which, if the certified copy in the record is correct, entitled her to receive no more than $25,000. Nevertheless, as we have noted, neither party introduced the insurance policy into evidence or apprised the trial judge of the policy's limitation on damages. After the evidence had been presented, Allstate moved to dismiss the action solely on the ground that Mr. Singleton had not been joined as a party defendant.

Because, in this breach of contract case, both parties essentially ignored the provision of the contract governing damages, the alleged cap on the coverage of the policy was not disclosed to the judge in advance of trial.[3] If Allstate's belatedly submitted certified copy is genuine, and if the policy is capped at $25,000, there is no evidence in the record to support an award of damages for breach of contract in excess of that amount. Indeed, Ms. Ramos has shown no basis for requesting relief beyond the limits stated in the policy; her prayer in the complaint for an award of $30,000—$15,000 less than the jury awarded, but $5,000 more than the policy cap—is not readily explicable.[4]

2. The judge added the following handwritten notation to her formal order:
   Defendant's legal arguments are without merit for the reasons stated by plaintiff. As to the jury award, it was reasonable given the nature of the crash and the pain and suffering involved.

3. In a situation such as the one here presented, it is prudent practice not to inform the jury of the policy limits but to enforce such limits as a matter of law. See Allstate Ins. Co. v. Miller, 315 Md. 182, 553 A.2d 1268, 1272 (1989) and text, infra, at pages 285–286.

4. The District's "Compulsory No Fault Motor Vehicle Insurance Act of 1982," D.C.Code §§ 35–2101 et seq. (1977 & Supp.2000), provides in pertinent part as follows:

Each insurer selling motor vehicle insurance in the District with respect to any motor vehicle registered or principally garaged in the District shall include coverage for bodily injury or death in amounts of $25,000 per person injured in any 1 accident, or $50,000 for all persons injured in any 1 accident ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.
D.C.Code § 35–2106(f)(2). Allstate having formally admitted that Mr. Munoz' policy provided for uninsured motorist benefits, those benefits were required to include coverage for bodily injury to a passenger, at least in the amount of $25,000.

Counsel for the plaintiff argued in this court that his client, as a third party beneficiary, was a stranger to the contract and could not be expected to know its contents. Putting to one side that the plaintiff is the wife of the insured and was riding in his automobile, it is difficult to suppose, in light of Super. Ct. Civ. R. 11, that able counsel would file an action for breach of contract without first familiarizing himself with the terms of the contract on which the suit was based. *Cf. Nelson v. Allstate Ins. Co.*, 753 A.2d 1001, 1004 (D.C.2000) (affirming judgment after the trial court had ruled that the insured "could not complain of surprise because he had filed suit under the contract and therefore must have known its terms"). But whether the attorneys had read the policy or not, the verdict of the jury exceeded the alleged coverage of the policy by $20,000, and the trial ended without disclosure by anyone of this important fact. Unless the certified copy provided by Allstate after the trial was fabricated, inaccurate, or otherwise unreliable or unenforceable, judgment was entered upon the verdict under what can only be characterized as an illusory state of affairs.

## IV.

### LEGAL ANALYSIS

■ Allstate denominated Motion No. 2, in which it sought to conform the verdict to the policy cap, as a motion for a new trial pursuant to Super. Ct. Civ. R. 59. In the part of the motion relevant to our discussion, however, Allstate did not ask for a new trial. Rather, Allstate prayed pursuant to Rule 59(e)[5] that the jury award be reduced to conform to the policy limits.

The essence of Allstate's position is that upon presenting proof to the court of the existence of the $25,000 cap on its liability under Mr. Munoz' insurance policy, Allstate became entitled, as a matter of law, to a reduction of the jury's verdict to conform to the policy limits. Allstate contends that the trial judge committed legal error by declining to consider the relevant provisions of the policy when they were brought to her attention in a post-trial motion, and by declining to strike from the jury award the excess over the amount payable under the policy. Ms. Ramos, on the other hand, claims as a matter of law that Allstate waived any cap on the policy by failing to present its proof in advance of trial or at trial.

Although the underlying issue appears to us to be essentially one of law, and thus subject to *de novo* review, the balancing of considerations of finality against a party's assertedly belated demand for a determination on the merits necessarily involves the exercise of discretion. As we noted in *Teachey v. Carver*, 736 A.2d 998, 1004 (D.C.1999), however,

5. Rule 59(e) authorizes motions to alter or amend the judgment. Generally, a motion pursuant to Rule 59(e) is appropriate where the movant "is seeking relief from the adverse consequences of the original order on the basis of error of law"; if additional facts are alleged, the motion is cognizable under Super. Ct. Civ. R. 60(b). *See Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 804 (D.C.1984). Here, Allstate was technically attempting to present new evidence, although that evidence consisted of the operative provisions of the contract on which the action was based. Because, as we show in the text, and assuming the policy cap proffered by Allstate to be genuine, the proceedings should and presumably would have been conducted in the same way even if the court had been apprised in advance of the policy limits, so that Ms. Ramos suffered no prejudice from the belated disclosure, we need not decide whether this motion was properly cognizable under Rule 59(e) or Rule 60(b), or possibly as a renewed motion for judgment as a matter of law pursuant to Rule 50(b); the result must be the same in any event.

[a]n exercise of discretion must be founded upon correct legal standards. *See, e.g., In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991). "A district court by definition abuses its discretion when it makes an error of law," *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

In any event, we need not decide whether the judge's ruling should be viewed as a determination of law or as an exercise of discretion. In either case, the judgment cannot be sustained.

It appears to be undisputed—indeed, it is indisputable—that if counsel for Allstate (or, for that matter, Ms. Ramos' attorney) had advised the court, in advance of trial, that the maximum amount payable to Ms. Ramos under her husband's policy was $25,000, and if no evidence had been presented challenging the authenticity or enforceability of this provision in the policy, then the trial court would have been obliged to enforce the limitation and to reduce accordingly any jury verdict in excess of $25,000. In a suit for breach of a contract in which the defendant has agreed to pay, at most, $25,000, the court cannot sustain a verdict in the amount of $45,000.

Ms. Ramos takes the position that by failing to invoke the alleged policy limits until after the trial, Allstate waived any contractual limitation on its liability, and, in effect, forfeited $20,000—the difference between the jury award and the policy cap. We cannot agree. We have stated that "equity abhors forfeiture; so, indeed, does the law." *Ass'n of Am. R.Rs. v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citations and internal quotation marks omitted). If the policy limits were in fact as Allstate represents them to be, it would undoubtedly have been preferable for counsel to have informed the court, in advance, of the policy cap, so that the judge could determine how the coverage limitation should be handled procedurally. There is, however, nothing in the record to suggest that the failure to provide such notice to the court operated to Ms. Ramos' prejudice or affected the proceedings in any significant or legally cognizable way. Indeed, if the judge had been aware of the claimed cap, the trial should and presumably would have proceeded just as it did in fact.

This is so because even if the trial judge had been made aware in advance of trial of any policy limits, it would not have been appropriate for her to bring the $25,000 cap to the attention of the jury. "Where the insurance carrier is a party to the suit, the existence of insurance obviously cannot be kept from the jury; however[,] *the amount of uninsured motorist coverage should not be disclosed, unless the amount is in controversy.*" *Allstate Ins. Co. v. Miller, supra* note 3, 553 A.2d at 1272 (emphasis added; footnote omitted). The court reasoned in *Miller* that the amount of coverage had no legitimate bearing on the jury's consideration of the issue of damages, that "establishing the availability of a sum certain is likely to distort a jury verdict," *id.,* and that "[t]he jury's knowledge of the available policy limits can work to the disadvantage of either party[,] depending on the circumstances." *Id.* The court concluded that "[i]f the verdict exceeds the coverage amount, the trial court should then reduce the verdict, upon proper post-trial motion, to comply with the limits of the policy." *Id.* at 1273. Holding that "judgment on the contract claim exceeding the $50,000 limit was *erroneous as a matter of law,*" *id.* at 1271 (emphasis added), the court ordered the trial judge to reduce the judgment accordingly.

We agree with the court's analysis in *Miller.* We note that, in the present case, if the trial judge had been advised in advance of any policy limits, and if she had correctly followed the procedure set forth

in *Miller*, then the evidence that the parties would have placed before the jury would not have differed in any respect from the evidence that was in fact presented when the case was actually tried. The effect of the policy cap would have been determined, as in *Miller*, by a post-trial motion. Under these circumstances, we find it difficult to understand how Ms. Ramos could have been prejudiced by the failure of Allstate's attorney to advise the court in advance of the alleged coverage limits, particularly where Ms. Ramos had brought a breach of contract suit based on the policy and was thus chargeable with knowledge of the maximum which she could be entitled to recover. If a post-trial motion to reduce the verdict to conform to any policy cap would have been appropriate and successful where the judge had been apprised of the limitation—and *Miller* holds that it would have been—we see no persuasive reason to reach a different result on the present record. Even if the judge had known in advance of the claimed policy cap, there appears to be little practical use to which she could have put this information prior to the return of the verdict.

In the trial court, Ms. Ramos argued that if Allstate had introduced the alleged policy limits into evidence, she could have raised various purported equitable and other defenses. See pages 283–284, *supra.* On their face, most of these defenses appear problematic.[6] Nevertheless, given Allstate's lack of diligence in asserting its position, we conclude that Ms. Ramos

should be given the opportunity, on remand, to contest Allstate's claim that the $25,000 limitation was a part of the policy. If the claimed cap was a part of the policy, Ms. Ramos is entitled to attempt to show that she suffered legally cognizable prejudice as a result of Allstate's delay. In determining whether Ms. Ramos suffered such prejudice, however, the trial court must take into consideration that the plaintiff was chargeable with knowledge of the contents of the policy on which she based her suit, *see Nelson, supra,* 753 A.2d at 1004, and that any reliance by Ms. Ramos on Allstate's action or inaction must be shown to have been reasonable. The need to try a material question of fact also would justify the trial court's initial determination that Allstate's motion came "too late," as it would mean that the case would not—as we have assumed—have been tried as it was. In the absence of proof of prejudice, or the need to try a material question of fact, the trial court must reduce the judgment to conform to the policy limits.

## V.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*[7]

---

**6.** According to Ms. Ramos, "plaintiff *might have* claimed that the contract produced was not the same contract which plaintiff's husband signed." (Emphasis added.) This would amount to an allegation by Ms. Ramos of fraud on the part of Allstate, and the plaintiff and her counsel surely knew or should have known whether so serious an accusation would have been well-grounded. Ms. Ramos

also stated that she might "conceivably" have asserted "fraud in the inducement" of the very contract that formed the basis for her suit. One might expect the plaintiff to know whether or not she has evidence of fraud in the inducement.

**7.** We deal briefly with Allstate's remaining contentions. Allstate claims that the action should have been dismissed because Single-

ton was not made a party defendant. In the trial court, Allstate presented this contention in Motion No. 1, but Allstate did not appeal from the denial of this motion. We therefore conclude that Allstate has not preserved the issue for appeal. *See* D.C.App. R. 3(a) ("The notice of appeal ... shall designate the judgment, order, or part thereof from which appeal is taken."); *Perry v. Sera,* 623 A.2d 1210, 1215 (D.C.1993) ("An appellant should take pains to be precise in this regard.... [I]t may be that in litigation two or more potentially appealable orders will be entered. In such a case, the notice of appeal serves to indicate the one in fact appealed.") (citation omitted).

Moreover, even if we were to reach the merits of this issue, the dispositive statute provides:

> Each insurer selling motor vehicle insurance in the District with respect to any motor vehicle registered or principally garaged in the District shall include coverage ... for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.*

D.C.Code § 35–2106(f)(2) (emphasis added). In the present case, Allstate formally admitted that "the driver of the Isuzu was the sole cause of the accident" and that "[Ms. Ramos] was injured as a result of the accident." These admissions established, for purposes of determining Allstate's liability, that Ms. Ramos was entitled to recover damages from the uninsured motorist, Mr. Singleton, within the meaning of § 35–2106(f)(2). Joining Mr. Singleton as a defendant would have served no practical purpose, and Allstate could show no prejudice from Ms. Ramos' failure to join him. *See also Reese v. State Farm Mut. Auto. Ins. Co.,* 285 Md. 548, 403 A.2d 1229, 1232 (1979) ("The overwhelming majority of courts have held that under this [similar statutory] language, it is not necessary for the insured to bring suit and recover against the uninsured motorist.").

Finally, Allstate contends that the trial judge erred by admitting into evidence certain of Ms. Ramos' medical records. The trial judge has broad discretion in ruling on the admissibility of evidence. *See, e.g., Mitchell v. United States,* 408 A.2d 1213, 1215 (D.C. 1979). We discern no abuse of discretion in this case. *See, e.g., Sullivan v. United States,* 404 A.2d 153, 158 (D.C.1979); Super. Ct. Civ. R. 43–I(a).